## OF WEST VIRGINIA,

AT THE AUGUST TERM THEREOF, HELD AT CHARLESTOWN, IN THE COUNTY OF JEFFERSON, COMMENCING ON THE SEC-OND DAY OF AUGUST, 1876, AND ENDING ON THE SECOND DAY OF NOVEMBER, 1876.

## CHARLESTOWN.

### WILLIAM C. BLAINE *v.* C. & O. R. R.

September 9, 1876.

1. A case in which a count in a declaration in trespass on, the case, against a railroad company for killing a horse of the plaintiff, on its railroad track, was held sufficient upon demurrer. See opinion of the Court.

2. After the plaintiff, under such count, had given to the jury, evidence tending to prove that the defendant's agents and servants, had by negligence in running the defendant's locomotive and cars, killed the plaintiff's horse, at the time, and in the manner alleged in said count, and also the value of said horse, the defendant offered in evidence, a deed from one Waters to the defendant, for the purpose of proving that the horse, which was killed, was, when first seen, on land owned by defendant, and that defendant had acquired title thereto from said Waters, and to show that defendant had made a contract with said Waters to fence the track of

defendant's railroad, through his farm, and the plaintiff admitted that the defendant had acquired and owned title to the land occupied by its track, from the said Waters, but objected to the admission of the deed, to prove a contract between the defendant and Waters, in regard to the fencing of said track, and the court refused to allow the deed to be read for said purpose, stating that the defendant's title to said land was admitted, and excluded the deed.—HELD:

That under the circumstances, the court did not err to the prejudice of the defendant.

3. There is no law in the State of West Virginia, of general operation, prohibiting the owners of domestic animals, consisting of cattle, horses, hogs, &c., from suffering them to run at large upon the range of uninclosed land, except when unruly and dangerous; and the rule of the common law of England, requiring the owners of such animals to keep them on his own land, or within inclosures, has never been in force in West Virginia, being inconsistent with the legislation of the State.

4. The owner of such animals, in allowing them to be at large on the range of uninclosed lands, is not chargeable with *an unlawful act*, or an omission of ordinary care in keeping his stock, subject to the qualification, however, that animals which are unruly, or dangerous, are required to be restrained.

5. There is no law in this State, of general operation, requiring any person to fence his land, uninclosed; but the person who leaves his lands uninclosed, takes the risks of intrusions thereon, by the domestic animals of others running at large, and the owner of such animals, in allowing them to run at large, takes the risk of their loss, or of injury to them by unavoidable accident from any danger into which they may happen to wander.

6. The right of a railroad company to the free, exclusive, and unmolested use of its railroad track, is nothing more than the right of every land proprietor, in the actual use and occupancy of his lands, and does not exempt the company from the duty enjoined by law upon every person, so to use his own property as not to do any unnecessary injury to another.

7. There is no law in West Virginia requiring railroad companies to fence their road, but when they leave their road open and uninclosed by sufficient fencing, and cattle guards, they take the risk of intrusions upon their roads, by animals running at large as do other proprietors, who leave their land uninclosed; so that the owner of domestic animals, in allowing them to be at large, takes the risk of their loss, or injury by unavoidable accident; and the company, in leaving its road unprotected by an inclosure, runs the risk of animals at large getting upon the road, without any remedy against the owner of the animals.

1876.
August Term.

Blaine
v.
C. & O. R. R.

8. The liability to make reparation for an injury, by negligence, is founded upon an original moral duty, enjoined upon every person, so to conduct himself, or exercise his own rights, as not to injure another.

9. The remote negligence of the plaintiff, will not prevent his recovering for an injury to his property, *immediately* caused by the negligence of the defendant. The negligence of the plaintiff, that defeats a recovery, must be a *proximate* cause of the injury.

10. Suffering domestic animals to run at large, by means whereof they stray upon an uninclosed railway track, where they are killed by a train, is not in general, a *proximate* cause of the loss, and hence, although there may have been some negligence in the owner's permitting the animals to go at large, such negligence being only a *remote* cause of the loss, it will not prevent his recovering from the railroad company, the value of the animals, if the immediate cause of their death, or injury, was negligence of the company's servants in conducting the train.

11. The bare fact that a railway is uninclosed, there being no statute requiring it to be fenced, does not, in general, render the railroad company liable to pay for animals straying upon the track, and killed by a train—such want of fencing being in general, only a *remote* cause of the loss.

12. Where a railroad company leaves its railroad uninclosed, through a country where domestic animals are allowed to be at large, and thus exposed to the casualities of the animals getting upon the railway track, it is the duty of the railroad company, through its agents, to use, at least, ordinary care to avoid unnecessary injury to the animals, when found in the way of a train on the road. The first and paramount duty of the agents of the company, is a due regard for the satety of the persons and property in their charge, on the train, for which they are held to a high degree of care; and so far as consistent with this paramount duty, they are bound to the exercise, of what, in that peculiar business, would be ordinary and reasonable care to avoid unnecessary injury to animals casually coming upon their uninclosed road, and, if the servants of the railroad company, in charge of a train, can, by the exercise of ordinary care, see and save domestic animals which have wandered on the railroad, it is their duty to do so, and for any injury to animals, arising from a neglect of such care, the company is liable in damages to the owner.

On a writ of error to two judgments, of the circuit court of Kanawha county, rendered on the twelfth and thirteenth days of December, 1873, respectively, in a suit then pending in said court, in which William C.

Blaine, was plaintiff, and the Chesapeake and Ohio Railroad Company, was defendant.

The facts of the case are fully set forth in the opinion of the Court.

Hon. Joseph Smith, Judge of said circuit court, presided at the trial below.

*W. A. Quarrier* and *W. H. Hogeman* for plaintiff in error.

*J. M. Laidley, N. Fitzhugh,* and *J. H. Ferguson* for defendant in error.

HAYMOND, PRESIDENT:

This is an action of trespass on the case brought by the plaintiff against the defendant, in the circuit court of the county of Kanawha, in the year 1873. The declaration contains two counts. The first count, after alleging that the defendant is " a corporate body," and that it has been summoned, etc., alleges that " on the first day of October. 1872, at the county of Kanawha, aforesaid, the said plaintiff owned and was possessed of a horse of great value, to-wit: of the value of five hundred dollars ; and the said defendant was, also, then and there the owner, and possessed of a certain railway in the said county of Kanawha, which it used and operated with its locomotives and cars, under the care, management and direction of its servants and agents in that behalf. Nevertheless the said defendant, then and there, by its said servants and agents, so improperly and negligently used, managed, run, and operated its said locomotives and cars, that by and through the negligence, carelessness, and improper conduct of the said defendant, by its servants and agents in that behalf, the locomotive and cars of the said defendant, then and there, ran upon and over the said horse of the said plaintiff, and thereby, and then and there, broke the leg of the said horse, and the said horse of the said plaintiff, thereby, then and there became and was rendered of no

use or value to the said plaintiff, to-wit, on the day and year aforesaid, at the county aforesaid." The second count I omit to state, because, as the case is presented and argued before us, it is immaterial.   The declaration, at the end of the second count contains this conclusion: " Wherefore, the said plaintiff saith that he is injured and hath sustained damage to the amount of five hundred dollars, and, therefore, he sues, etc." On the twenty-sixth day of May, 1873, the defendant appeared in court, by its attorney, and demurred generally to the declaration, and to each count thereof, and the plaintiff joined in the demurrer.   Afterwards, in December, 1873, the court overruled the demurrer, as to the first count of the declaration, but sustained the demurrer as to the second count.   Afterwards, on the twelfth day of December, 1873, the defendant plead not guilty, to which the plaintiff replied generally, and issue was regularly joined.

And on the same day a jury came and, being duly elected, impannelled, and sworn, on hearing the evidence, and arguments of counsel, found their verdict in favor of the plaintiff, and assessed his damages at $200. Afterwards, on the thirteenth day of December, 1873, the defendant's attorneys, moved the court to set aside the verdict of the jury, and award a new trial.   But the court overruled the motion, and rendered judgment in favor of the plaintiff, upon the verdict of the jury for the amount thereof, with interest from the date of the verdict, and the costs of the suit.   During the progress of the trial of the cause, the defendant excepted to several opinions of the court, and took and filed three several bills of exceptions to opinions and rulings of the Court, given and made during the trial of the cause. The bills of exceptions are duly signed and made part of the record, and are numbered, respectively, 1, 2, and 3. By bill of exceptions No. 1, it appears that on the trial of the cause, it was proved by the plaintiff, that in the latter part of November, 1873, a locomotive and train of sixty-seven coal cars ran into, and killed a horse be-

1876.
August Term.

Blaine
v.
C. & O. R. R.

longing to plaintiff, about two and a half miles below Charleston, worth $250; that there was a conflict of evidence as to when the engineer first saw the horse; that the engineer and fireman testified that the locomotive was within twenty yards of the horse before it was seen; that the plaintiff and another witness proved that they saw the collision; that it occurred on Sunday afternoon, in daylight, about two or three o'clock; that the horse which was killed, and another horse belonging to plaintiff, were standing on the railroad track, about one hundred and fifty yards below plaintiff's house; that plaintiff was called out of his house by the other witness, who heard the train coming up the road, and he ran out to drive the horses off the track. · It was also proved that there was a straight stretch of road from the place where the horses were standing, of five hundred or six hundred yards, in the direction from which the train was coming, and that the horses could have been seen for that distance; that the engineer and fireman testified that the horses were not standing on the track, but ran on it about twenty yards ahead of the locomotive, from behind a clump of bushes, which had concealed them; that the plaintiff and another witness, who was present, testified that the horses were standing on the track, as aforesaid; that it was also proved, by a number of witnesses, that there was no clump of bushes there, and had not been any since the construction of the railroad was first begun, and that there was nothing in the way to obstruct the vision for five hundred or six hundred yards. It was also proved that when the train got near the horses, they started to run up the track, and one of them was turned off the track by plaintiff, but the other ran one hundred and fifty yards, jumping a cattle guard, before he was overtaken by the train; that there was, also, a conflict of evidence as to the diligence used by the defendant; that the engineer and fireman stated that everything, that could be done, was done to prevent the collision; that the brakes were whistled
33

1876.
August Term.

Blaine
v.
C. & O. R. R.

"down," the engine reversed, and the alarm sounded; that the plaintiff and another witness proved that nothing, so far as they could see, was done to save the horse; that the speed of the train was not slackened either before or after the horse was killed; that there was no whistle for "up brakes" after or before the collision; that the train was in full view, and they saw no brakesman; that the coal cars were open cars, and if there had been any brakesmen on them they could have easily seen them, and that they saw no one on said train, except on the locomotive; that it was also proved that all the coal cars were provided with brakes; and it was admitted that there was a caboose attached to the train, and that there was a brake on the caboose, and if there had been a brakesman in the caboose, he could not have been seen by the witness from the roadside; that it was proved that the horse ran one hundred and fifty yards on the track, from the point where he started, before he was overtaken by the train. The land on which the horse was killed was owned by the defendant, having been purchased by it from the plaintiff for its railroad tracks; that plaintiff had also fenced the railroad track, as far as it ran through his land, under a contract with the defendant; but the track was not fenced at the place where the horses were first seen on the track, which was on land acquired by the defendant, from one Waters. That it was also proved that the plaintiff had turned his horses out that day to pasture on the island owned by him, and opposite plaintiff's farm and the Waters farm; that the island was not fenced, and that the horse might wade or swim the river to the Waters farm, and cross the narrow bottom, and get to the railroad without passing or jumping any fence, there being no fence between the railroad and river, and that plaintiff habitually pastured his horses on said island. And this being the "substance" of the evidence, the jury found for the plaintiff, and the defendant asked the court to set aside the verdict rendered in the cause, and award him a new trial. But the

court overruled the motion, and refused to set aside the

verdict of the jury, and award a new trial, and defendant excepted.

By bill of exceptions No. 2, it appears that, after the evidence had been adduced, which is contained in bill of exceptions No. 1, the defendant offered in evidence a deed from one Waters to the defendant, for the purpose of proving that the horse which was killed was, when first seen, on land owned by defendant, and that defendant had acquired title thereto from said Waters, and to show that defendant had made a contract with said Waters to fence the track of defendant's railroad through his farm.

By this deed, which is made a part of the bill of exceptions, it appears that, on the twenty-eighth of June, 1870, said Waters, in consideration of $1 in hand paid, and in consideration of other large sums of money therein mentioned, &c., granted to the defendant the right of way for the construction of a double track of railway through the lands owned by him on the south side of the "Great Kanawha river," in the county of Kanawha, bounded on the lower side by the lands of James W. Oaks, and on the upper side by the lands of W. C. Blaine, containing three hundred and seventy-five acres, with all the privileges and immunities necessary and requisite for the construction and enjoyment of the same; but the grant is confined to the line last surveyed by the engineer of defendant, and to be forty feet on the lower side, and sixty feet on the upper side, of the center stakes thereof. And the said Waters covenants in the deed, for the consideration of $765 in hand paid, to build and construct, by the time the railway of the defendant is ready for running of cars, and forever thereafter maintain, a lawful fence on both sides of the line of said railway through said tract of land. The deed seems to have been duly executed, acknowledged, and admitted to record, in said county. The plaintiff admitted that the

defendant had acquired, and owned title to, the land occupied by its track from said Waters, but objected to the admission of the deed to prove a contract between the defendant and said Waters in regard to the fencing of said track, and the court refused to allow the deed to be read, as evidence, for said purpose, stating that the defendant's title to said land was admitted, and excluded the deed; to which opinion and action of the court the defendant excepted, in due form. By bill of exceptions No. 2, it appears that, after the evidence, which is contained in bill of exceptions No. 1, had been given to the jury, which evidence is made a part of this bill of exceptions, and before the jury retired, the defendant asked the court to give to the jury the following eight instructions, viz.: "1. If the jury believe that the damage in this case was caused, in any degree, by the carelessness or negligence of the plaintiff, then he cannot recover, even though there were negligence on the part of the defendant. 2. If the jury believe that the plaintiff's horse was suffered to stray, through plaintiff's negligence, upon the lands of his neighbors, and that, from thence he came upon the railroad track of the defendant, and was there run over and killed by the locomotive of the defendant, the plaintiff cannot recover, even though there was negligence on the part of the defendant. 3. That the plaintiff's horse, under the evidence in this cause, was trespassing on the property of the defendant,, and therefore the plaintiff cannot recover, even though there was negligence on the part of the defendant. 4. That the plaintiff, by the law of the land, was bound to take care of his own horse, and to keep him off the track and land of the defendant, and, as he failed to do so, without any necessity for such failure, and the horse was killed on defendant's track, he cannot, under the evidence, recover in this cause. 5. That negligence on the defendant's part must be proved, and is not to be inferred, and that the injury itself is not evidence of any negligence on the part of the defendant. 6. That, by the common law, it

is the duty of the plaintiff to keep his horses or cattle enclosed at his peril, and if he habitually pastures them in a field where they can stray and wander upon the railroad track of defendant, without passing or crossing a fence, and an injury occur to the said horses or cattle by reason of their being run over by the trains of the defendant, then the defendant is not liable. 7. That the common law of England, so far as it is not repugnant to the principles of the constitution of this State, and except so far as it has not been altered by the laws of Virginia passed before June, the twentieth, 1863, and so far as they have not been altered by the laws of this State, is the law of this State. 8. That if the jury believe that the servants and agents of the defendant, used all the diligence and precaution in their power to prevent the accident described in the declaration, then they must find for the defendant." But the court refused to give the instructions 1, 2, 3, 4, and 6, but gave the instructions 7, 8, and 5, to which opinion and action of the court, in refusing to give said instructions 1, 2, 3, 4, and 6, the defendant excepted, in due form. The preceding full statement of this case, as it appears here by the record, is made, because of the novelty and importance of several of the questions involved in this State, and because it is deemed proper and necessary to a proper understanding of the opinion of this Court, as hereinafter expressed.

The first question arising upon the record is, did the circuit court err in overruling the defendant's demurrer to the first count of plaintiff's declaration?

The first count though not so full and technical as it might be, seems to be substantially in conformity with the second count for negligence in injuring another's carriage while driving on a public highway, prescribed by Chitty in his pleadings. 2d Chitty Plea. 7th Amer. Ed. side page 711, and top. p. 710. The twenty-ninth section of chapter one hundred and twenty-five of the Code of

1876.
August Term.

Blaine
v.
C & O. R. R.

this State provides, that on a demurrer (unless it be a plea in abatement) the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has heretofore been deemed mispleading, or insufficient pleading or not, unless there be omitted something so essential to the action or defense that judgment according to law and the very right of the cause cannot be given. It seems to me that for the reason in part that the common law of England in relation to the owners of cattle trespassing on the lands of others generally has been materially modified and altered as hereinafter shown, and also under the precedent and law above cited the said first count in the declaration is substantially sufficient to enable the court to give judgment thereon "according to the law and the very right of the case." There was therefore, no error in the judgment of the circuit court in overruling the demurrer to said first count.

Second. Did the court err, in rejecting the said deed from Waters to the company, under the circumstances shown in bill of exceptions No. 2? The plaintiff admitted that the defendant had acquired, and owned, title to the land occupied by its track, from said Waters, it, therefore, was rendered unnecessary for the defendant to give the deed in evidence to the jury, to prove that the defendant had acquired, and was possessed of, the Waters title to the land occupied by defendant, for its road. The defendant was, owing to the fact of the said admission, not injured, or prejudiced, by the exclusion of said deed, so far as relates to showing that it had acquired, and was possessed of the title of said Waters to said land. Did the circuit court err, in refusing to allow the deed from Waters to be given in evidence, by the defendant, for the purpose of showing that defendant had made a contract with said Waters, to fence the track of defendant's railroad through his farm? If this suit had been brought by Waters, against the defendant, for killing his horse, which had strolled from Waters' land, adjacent to the railroad, on either side, and gotten upon the railroad

track, and was there killed by the defendant's cars, in passing, by reason of Waters having failed to comply with his contract to fence the track of the railroad, with a lawful fence, and to maintain such fence, for which he had been paid, perhaps it would have been proper to have allowed the deed to have gone, in evidence, to the jury, as against Waters, for material purposes, but I am unable to see how the making of said contract, by the defendant, with Waters, or his failure to comply with the contract, for any cause, can, or ought, in any way, to affect the plaintiff's rights in this case. If such contract was made with Waters, and he failed to perform it, and the defendant, by reason of such failure, has, or shall, hereafter, be damnified, its remedy for such damage, in a proper case, is against Waters. Plaintiff can not be prejudiced, or bound, by the contract to which he was not a party, or, by the failure of Waters to perform the contract, in any respect. The plaintiff had fenced the railroad track, as far as it ran through his land, under a contract with the defendant, but the track was not fenced at the place where the horses were first seen on the track, which was on the land acquired, by defendant, from Waters. No part of the track had been fenced, at the Waters farm. · It seems to me to be quite manifest, that the circuit court did not err, under the circumstances stated, in refusing to allow the defendant to give said deed from Waters, in evidence, to the jury; that the defendant was not prejudiced thereby, and that, if the court had allowed the deed to have been given to the jury, for the purpose of showing that defendant had made a contract with Waters, to fence the track of defendant's railroad through his farm, it would have been error, and might have prejudiced the plaintiff.

Third. Did the circuit court err in refusing to give to the jury the first, second, third, fourth and sixth instructions, prayed by the defendant? As these instructions are closely connected in principle, and, in fact, involve, in a greater or less de-

gree, the same principles of law, as may herein-
after be seen, I proceed to consider them all together,
instead of separately. It is proper to state here, that,
under the laws of this State applicable to the defendant,
that the defendant is fully authorized to acquire land for
the purposes of its road—that is, the road way, etc., in
fee simple, and that it may acquire the land for that pur-
pose by condemnation or purchase. As this case is pre-
sented, I am bound to consider that the defendant was
at the time the horse in question was killed, the owner
in fee simple, of the land, where plaintiff's horse was first
seen on defendant's railroad track, and also when the
plaintiff's horse was killed, and, as such owner, was, at
the time the horse was killed, entitled to the exclusive
use of the land, to as great and unlimited extent as own-
ers of the fee simple right, are to other lands. At com-
mon law, the tenant of a close was not obliged to fence
against an adjoining close, unless by force of prescription,
but he was, at his peril, to keep his cattle on his own
close, and to prevent them from escaping. *Rust v. Low,
et al.*, 6 Mass. R., 94. Opinion of Chief Justice Shaw,
5 Greenleaf, (Maine) R., 359; *Tonawanda Railroad Co·
v. Munger*, 5 Denio (N. Y.) 259. By the common law,
every unwarrantable entry on another's land is a trespass,
whether the land be enclosed or not; 3 Blackstone 7 Com.
209, Selw. N. P. 1101. And a person is equally an-
swerable for the trespass of his cattle or horses, as of him-
self, and when it appeared that the defendant's horse or
cattle had entered the plaintiff's field, and did damage
by destroying his grass, etc., the plaintiff recovered,
although there was no fence around the field; 3 Black-
stone's Com. 211; 2 Robinsons' New Practice 646, 647;
*Wells v. Howell*, 19 Johnson's R., 385. But Robinson,
in the fifth division of the sixty-eighth chapter of the
second volume of his New Practice, says: "In Vermont,
Connecticut, Pennsylvania, Virginia, South Carolina,
Illinois and Ohio, the rule as to cattle going at large, is
different from that of England." See pages 648, 649,

1876.
August Term.

Blaine
v.
C. & O. R. R.

650. It is maintained by the plaintiff that the common law, as above stated, is either inapplicable here, or abrogated by statute. Our present State Constitution declares that such parts of the common law and the laws of this State as are in force when it goes into operation, and, is not repugnant thereto, or has not been repealed, shall continue in force until repealed or amended. See article eight and thirty-sixth section. The eighth section of the eleventh article of the first Constitution of this State, which was in force at the adoption of the present constitution, declares, that "such parts of the common law, and of the laws of the State of Virginia, as are in force within the boundaries of the State of West Virginia, when this constitution goes into operation, and are not repugnant thereto, shall be, and continue, the law of this State, until altered or repealed by the Legislature." Much of our statute law, we have derived from the State of Virginia, and, indeed, copied therefrom, and as we have just seen, the laws of Virginia (including the common law in force in Virginia,) which were in force within the boundaries of this State at the adoption of her first constitution, were continued in force until altered or repealed. And, if the common law was in force in this State, at the adoption of the present constitution, in relation to the owners of domestic animals, running upon the range of uninclosed lands of others, then it is still in force. There is no general law in the State of West Virginia, prohibiting the owners of domestic animals, consisting of cattle, horses, hogs, etc., from suffering them to run at large upon the range of uninclosed lands, except when unruly and dangerous; and the rule of the common law of England, requiring the owner of such animals, to keep them on his own land, or within inclosures, has never been in force in West Virginia, being inconsistent with the legislation of the State. *Baylor v. The Baltimore and Ohio Railroad Co.*, 9 W. Va. R. The owner of such animals, in allowing them to be at large, on the range of uninclosed lands, is

34

not chargeable with *an unlawful act*, or an omission of ordinary care in keeping his stock, subject to the qualification, however, that animals which are unruly or dangerous, are required to be restrained. *Kerwhaker v. C. C. &. C. R. R. Co.*, 3 Ohio State R., 172 ; *The Cleveland, Columbus and Cincinnati Railroad Co. v. Levi T. Elliott*, 4 Ohio State Reports, 474, 476, 477. There is no law in this State, of general operation, requiring any person to fence his own lands. But the person who leaves his lands uninclosed, takes the risk of intrusions thereon, by the domestic animals of others running at large, and the owner of such animals, in allowing them to be at large, takes the risk of their loss, or of injury to them, by unavoidable accident, from any danger into which they may happen to wander. 3d Ohio State R. 172 ; 4th Ohio State R. 476. The right of a railroad company to the free, exclusive, and unmolested use of its railroad track, is nothing more than the right of every land proprietor in the actual use and occupancy of his lands, and does not exempt the company from the duty enjoined by law upon every person, so to use his own property as not to do any unnecessary injury to another. There is no law in West Virginia requiring railroad companies to fence their roads ; but when they leave their roads open and unenclosed by sufficient fences and cattle guards, they take the risk of intrusion upon their roads by animals running at large, as do other proprietors who leave their land unenclosed ; so that the owner of domestic animals, in allowing them to be at large, takes the risk of their loss, or of injury to them, by unavoidable accident ; and the company, in leaving its road unprotected by an enclosure, runs the risk of animals at large getting upon the road, without any remedy against the owner of the animals. The liability to make reparation for an injury, by negligence, is founded upon an original moral duty, enjoined upon every person, so to conduct himself, or exercise his own rights, as not to injure another. The remote negligence of the plaintiff will not prevent his

recovering for an injury to his property, *immediately* caused by the negligence of the defendant. The negligence of the plaintiff that defeats a recovery, must be a *proximate* cause of the injury. Suffering domestic animals to run at large, by means whereof they stray upon an unenclosed railway track, where they are killed by a train, is not, in general, a *proximate* cause of the loss; and hence, although there may have been some negligence in the owner's permitting the animals to go at large, such negligence being only a *remote* cause of the loss, it will not prevent his recovering from the railroad company the value of the animals, if the *immediate* cause of their death, or injury, was negligence of the company's servants in conducting the train. The bare fact that a railway is unenclosed, there being no statute requiring it to be fenced, does not, in general, render the railroad company liable to pay for animals straying upon the track and killed by a train; such want of fencing being, in general, only a *remote* cause of the loss. Where a railroad company leaves its railroad unenclosed through a country, where domestic animals are allowed to be at large, and thus exposed to the casualties of the animals getting upon the railway track, it is the duty of the railroad company, acting through its agents, to use, at least, ordinary care and diligence to avoid unnecessary injury to the animals when found in the way of a train on the road. The first and paramount duty of the agents of the company, is a due regard for the safety of the persons and property in their charge on the train, for which they are held to a high degree of care; and, so far as consistent with this paramount duty, they are bound to the exercise of what, in that peculiar business, would be ordinary and reasonable care to avoid unnecessary injury to animals casually coming upon their unenclosed road; and if the servants of the railroad company, in charge of a train, can, by the exercise of ordinary care, see and save domestic animals which have wandered on the railroad, it is their duty to do so; and for any injury to

animals, arising from a neglect of such care, the company is liable in damages to the owner. *Baylor v. The B. & O. Railroad Co.*, 9th West Va. R.; *Kerwhacker v. C., C. & C. R. R. Co.*, 3d Ohio State R. 172; *The C., C. & C. Railroad Co. v. Elliott*, 4 Ohio State R. 474, 476, 477; *Trow v. The Vermont Central Railroad Co.*, 21 Vermont, 487.

The first instruction asked, is too broad in its terms, and, as it seems to me, might very well have misled, and confused, the jury, upon the question of negligence, on the part of the plaintiff, instead of enlightening them upon the law bearing upon the case. As we have seen, it is only when the negligence of the plaintiff is the *proximate*, and not the *remote*, cause of the injury, that he is not entitled to recover, if the immediate cause of the injury was the negligence of the defendant, or its agents, or servants, but the remote negligence of the plaintiff will not prevent his recovery for an injury to his property, immediately caused by the negligence of the defendant. But, under the principles of law hereinbefore stated, the said instruction was irrelevant, and inapplicable, to this case. The second, third, fourth, and sixth instructions, asked by the defendant, do not propound the law correctly, for reasons herein before stated. The court, therefore, did not err in refusing to give the said first, second, third, fourth, and sixth, instructions to the jury, prayed by the defendant.

The next, and only, question left for consideration, is, did the court err in overruling the defendant's motion, to set aside the verdict of the jury, and grant a new trial, upon the grounds that the verdict was against the law, and evidence? I have already stated the evidence adduced by plaintiff, and defendant, at the trial, as set forth in bill of exceptions No. 1. It is unnecessary to again repeat that evidence. The evidence of the plaintiff, and defendant, bearing upon the material question, as to

whether the death of the plaintiff's said horse was caused,

immediately, by the negligence of the defendant's agents, and servants, or not, is, manifestly, conflicting, and contradictory. As to whether the plaintiff's, or defendant's, witnesses should be believed, was a question of credit, proper for the jury to determine. The jury seem to have believed in the truth of the evidence of the witnesses of the plaintiff, and, it seems to me, under the principles of law, herein enunciated, the evidence adduced before the jury, by the plaintiff, fully authorized the verdict found for the plaintiff by the jury, and that the court did not err, in refusing to set aside the verdict.

For the foregoing reasons, the orders, and judgments, of the circuit court of the county of Kanawha, to which a *supersedeas* was awarded in this cause, must be affirmed, with damages, according to law, and costs, in this court, in favor of the defendant, in error, against the plaintiff, in error.

The other judges concurred.

JUDGMENT AFFIRMED.