# Wheeling.

## HAWKER *v.* THE B. &. O. R. R. CO.

### Decided November 8, 1879.

1879
Special Term.

1 A declaration against a railroad company for negligently and wrong- fully killing the plaintiff's cattle on its track need not state the acts of omission or commission which constituted the negligence and wrong.

2. If however the declaration avers that the injury to the cattle was caused "solely by the negligence and carelessness of the defend- ant, in this, that the said defendant seeing the plaintiff's cattle on the track carelessly and wrongfully drove its locomotive on them," the plaintiff cannot under such a declaration recover, if the evi- dence shows that the defendant's servants were guilty of no wrong or carelessness after the cattle were seen on the railroad, though they may have been guilty of such carelessness before they were seen; and it would be error in the court to give an instruction, which would probably mislead the jury to believe that they might render a verdict for the plaintiff based on the defendant's carelessness before the cattle were seen on the track.

3. If the killing of the cattle on the railroad track were under the circumstances an inevitable accident, the railroad company is not responsible therefor, though the engineer used no precaution, such as blowing the whistle or doing any thing else. If no pre- caution could possibly under the circumstances have avoided the accident, the failure to use any precaution will not render the railroad company liable.

4. The statement of the engineer in charge of the engine which kill- ed the cattle, made an hour after the accident and several hun- dred yards from where it occurred, though made while he was on the engine, which was off the track, having been thrown from the track as one of the results of the accident, are not competent evidence for the plaintiff in a suit against the company to prove negligence in the company, as they are no part of the *res gestæ.*

5. In an action for damages the judgment should be for the amount assessed by the jury as damages and interest on this amount from the day the judgment is actually rendered, and not from the first day of the term at which the judgment is rendered.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Marion, rendered on the 7th day of May, 1878, in an action of trespass on the case in said court then pending, wherein James Hawker, Jr., was plaintiff, and The Baltimore & Ohio Railroad Company was defendant, allowed upon the petition · of said defendant.

Hon. John Blair Hoge, judge of the third judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

On February 16, 1876, James Hawker, Jr., instituted in the circuit court of Marion county an action of trespass on the case. The plaintiff's declaration was as follows :

"James Hawker, Jr., the plaintiff in this action, complains of The Baltimore and Ohio Railroad Company, defendant, of a plea of trespass on the case, for that the said defendant, heretofore, to-wit, on the —— day of ——— 1875, at the county aforesaid, was a corporation, and owned and operated a certain railroad called the Baltimore and Ohio railroad, running from the city of Wheeling through the county aforesaid to the city of Baltimore, and on the said — day of ——, 1875, at the county aforesaid, the said defendant negligently, carelessly and wrongfully caused a train of cars upon its said railroad and under said defendant's control to be propelled and driven with great force in and upon the fat cattle of the plaintiff, whereby three of said fat cattle were instantly killed, and several others were greatly bruised, wounded and injured, without the fault or negligence of the plaintiff, and solely by the said negligence and carelessness of the said defendant in this, that the said defendant seeing the plain-

tiff's said fat cattle upon its said railroad, and well knowing that said cattle were upon said railroad without any fault, negligence or carelessness of the plaintiff, the said defendant recklessly, carelessly, negligently and wrongfully propelled and drove its locomotive engine and train of cars upon and over said fat cattle, and—not sound the whistle ot said locomotive nor slack the speed of said train of cars, nor use other precaution or means to prevent the injury aforesaid, but, on the contrary, the said defendant did wantonly, carelessly and negligently commit the injury and wrong aforesaid, in manner aforesaid by reason whereof the plaintiff says he is greatly injured (said three cattle which were then and there killed as aforesaid being of the value of $200.00, and the said seven cattle injured and wounded as aforesaid being of the value of $275.00), and hath lost said cattle, and is damaged to the extent of $475.00, and therefore brings this suit, etc."

The defendant demurred to this declaration, and the court overruled the demurrer, and the defendant pleaded not guilty, and issue was joined on this plea, and the jury failing to agree on a verdict were discharged, and in May, 1878, a second jury were sworn to try this issue, and they found a verdict for the plaintiff and assessed his damages at $250.00. The defendant moved for a new trial, which the court overruled, and on May 7, 1878, rendered a judgment for the plaintiff against the defendant for $250.00 with interest thereon from the 18th day of April, 1878, the first day of the term at which said verdict was rendered, and for his costs. The defendant took a bill of exceptions to the overruling of his motion for a new trial; and all the evidence in the case was certified by the judge. The defendant also took a bill of exceptions to the granting and refusing of certain instructions given the jury after all the evidence had been heard, and also a bill of exceptions to the admission by the court of certain evidence offered by the plaintiff. This exception is as follows:

" *Be it remembered,* That upon the trial of the issue in

this cause, after it had been shown that the cattle of the plaintiff had been killed and wounded by a collision with a train of cars owned by the defendant, and that William B. Turner was the engineer on said train at the time of the collision, the plaintiff introduced one J. C. Wood, a witness, and proposed to prove by him a statement made about an hour after the collision, and at some distance therefrom, by a man whom witness saw there on the engine, stationary and off the track, whom he called Turner, and whom he heard others at the time call Turner, and whom he had seen knocking about the engine, and who was dressed as a trainman, and whom he believed to be Turner, but did not know him to be the engineer, in relation to the said collision. The defendant objected to the witness being allowed to give such statement in proof to the jury, because the person making it was not sufficiently identified as the engineer, and because such statement was no part of the *res gestœ;* but its objection was overruled by the court, and the witness permitted to and did state that the man so believed by him to be named Turner, at the time and place referred to, said that he started the cattle about the "watch box," near Mike's mill, and when he struck the first one of the cattle he had to sand, and he thought that they would get off or he would knock them off. To which opinion and judgment of the court overruling said objection and permitting said evidence to go to the jury, the defendant, by its counsel, excepted, and now tenders this its bill of exceptions, which it prays may be signed, sealed and made a part of the record of this cause, and the same is accordingly done."

The plaintiff asked for two instructions, which the court granted and which the defendant excepted to. They were as follows :

"1. If the jury believe from the evidence that the cattle, or any of the cattle of the plaintiff mentioned in the declaration, were killed or injured whilst casually upon the defendant's railroad by a locomotive engine and train

of cars in charge of the defendant's servants, and if the jury further believe from the evidence that the injury might have been avoided by the exercise of proper and reasonable care and caution on the part of the servants of the defendant in charge of the engine and train, then the jury should find for the plaintiff, and in such case the measure of damages is the sum necessary to indemnify the plaintiff for the loss he sustained by the destruction or injury of his property.

"2. If the jury believe from the evidence that whilst the plaintiff was exercising ordinary care over his cattle mentioned in the declaration, they temporarily escaped from his enclosure without his knowledge, and wandered upon the defendant's railroad, and being there were killed or injured by a passing train of cars in charge of the defendant's servants, and if they further believe from the evidence that the servants of the defendant in charge of the train did not use due care and caution to avoid the injury, the jury should find for the plaintiff."

The defendant also asked an instruction, which the court refused to grant, and this refusal of the court was excepted to. This instruction was as follows:

"If the jury believe from the evidence that after the engineer, who was running the train which killed and wounded the plaintiff's cattle, did, after he saw the cattle on the track, use the best means to avoid their injury, or if because of the darkness of the night and the curvature of the road he could not see the cattle until his train was so close to said cattle that he could not avoid a collision by stopping the train, and that he did then turn the steam from the 'stop-cock' of the cylinder to frighten them off the track, which his experience had taught him to believe was the best means to frighten them, then they must find for the defendant."

The evidence at the trial, so far as it is deemed important to state it in order to an understanding of the opinion of this Court, is that in the fall of 1875 the plaintiff's cattle got out of his field near the railroad in the

1879
Special Term.

Hawker
v.
B.& O. R. R. Co.

morning. There is some evidence tending to show that the fence around this field was not good. On that night about ten o'clock three of these cattle were killed and seven wounded by being struck by an engine on the Baltimore and Ohio railroad, on a point on the road in said county where the road is following Mike's run, and on a very sharp curve on which the view of the road is to some degree obstructed by trees. When the engine got within about one hundred and seventy-five yards of a culvert, the engineer running the train saw two head of cattle on the right hand side of the track and about ten feet from it and thirty yards ahead of the engine. The engine had just before that struck one of the cattle that was lying down close to the track, but the engineer had not seen her and did not know that he had struck her. His attention was called to these cattle by the fireman on the train. After he saw these two head of cattle he opened the cylinder cocks, but did not blow the whistle. He says he did not blow the whistle, because the cattle not being on the track he did not consider it good policy to disturb them by making an unnecessary noise. The opening of the cylinder cocks makes a whirring noise, but not as loud a noise as the whistle. Another witness said in his judgment it was best to use the opening of the cylinder cocks when the cattle get on the track close in front of the engine; if two or three hundred yards ahead, it was, he said, of course best to use the whistle. The train was running seventeen or eighteen miles an hour and its speed was not checked. The moon was shining that night, but at this time it was under a cloud, and at a distance of one hundred yards you could not tell whether an object was a man or a cow. One of these two cattle ran across the track in front of the engine and was not hurt; and the same was shortly afterwards done by the other. The engineer during this time also saw others of the cattle near the track, which were safely passed; and he says he supposed he had passed all the cattle safely; but when he got within six yards of the culvert,

that is, after he had run from the time he first saw the cattle about one hundred and seventy yards, four head of cattle, which he had not seen till then, came suddenly upon the track crowding up to the culvert and facing the engine. The engineer then shut off the steam, and the engine struck these cattle and killed three of them. The engine was not thrown from the track then, but one of the cattle was rolled under it and it was in danger of being thrown from the track. The conductor was sent back to stop the train following this closely, and the engine was run along to give time to stop the next train. It went about three hundred yards, when it ran off the track, being thrown from it by one of the cattle remaining under it. During this whole time the whistle was not blown nor the cylinder cocks' opened, except when one of the two first cattle was close in front of the engine, the engineer saying that he had no time to do anything to save the cattle at the culvert; and they were seen so short a time before the engine struck them, that nothing which he could do would have been of any use. He could not on account of the short curve see more than fifteen or twenty yards in advance of the engine.

This is all the evidence in the case which I deem necessary to state. It is sufficient to enable us to understand the applicability of the instructions given and refused by the court; and it is only necessary to state this much of it, as this court for reasons stated in the opinion will express no opinion as to the weight of the evidence, or what facts ought to be regared as proved by the testimony.

From the judgment of the circuit court the defendant has been allowed a writ of error and *supersedeas* by this Court.

*C. Boggess,* for plaintiff in error, cited the following authorities :

Best Ev. (Wood's ed.) 876 ; 2 Addison Torts, §1375, n. 1 ; 5 W. Va. 325 ; 11 W. Va. 94 ; 17 N. Y. 131 ; 57

Ill. 265; 55 Ill. 503; 33 Ind. 355; 26 Ohio St. 185; 9 W. Va. 254; 14 Ind. 30; 18 N. Y. 248; 7 Gray 92; 28 Mich, 440; Va. L. J., June 1879; 35 Iowa 191; 25 Mich. 274.

1879
Special Term.

Hawker
v.
B. & O. R. R. Co.

*James Morrow, Jr.*, for defendant in error, cited the following authorities:

4 W. Va. 126; 1 Wall. 637; 1 How. 219; 8 Wall. 397; 47 N. H. 554; 12 W. Va. 116.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question presented by the record in this case is: Did the circuit court err in overruling the demurrer to the declaration? There was no necessity for the declaration to specify the acts of omission or commission which constituted the negligence of the defendant, which is the basis of the action. The degree of certainty required by the rules of pleading was met by the allegation that "the defendant negligently, carelessly and wrongfully caused a train of cars on its railroad to be propelled and driven upon the fat cattle of the plaintiff, whereby three of them were killed and seven others greatly bruised and injured." It is neither usual nor necessary to specify the acts or omissions of the defendant which constitute the negligence. This is a matter of proof, and need not be specified in the declaration. It was not specified in the declaration in the case of *Blaine* v. *The Chesapeake and Ohio Railroad Company*, 9 W. Va. 252, and *Baylor* v. *The Baltimore and Ohio Railroad Company, Id.* 270. The declarations which were held good by this court on demurrer in these cases did not in any way specify the acts of omission of the defendants, which constituted the basis of the action in each of these cases.

But stated in the manner these acts are in the declaration in this case, they can not be regarded as surplusage. The declaration says that this injury to the cattle of the plaintiff was "solely by the said negligence and careless-

Syllabus 1.

1879
Special Term.

Hawker
v.
B. & O. R. R. Co.

ness of the defendant, in this, that the said defendant seeing the plaintiff's fat cattle upon its said railroad, and well knowing the said cattle were upon said railroad without any fault, negligence or carelessness of the plaintiff, the said defendant recklessly, carelessly, negligently and wrongfully, propelled and drove its locomotive engine and train of cars upon and over said fat cattle, and did not sound the whistle of said locomotive, nor slack the speed of said train of cars, nor used other precaution or means to prevent the injury aforesaid, but on the contrary the said defendant did wantonly, carelessly and negligently commit the injury and wrong aforesaid in the manner aforesaid." This amounts to an allegation that the defendant after it saw the plaintiff's cattle on its track did wantonly and negligently propel its.locomotive upon them and did not use any precaution to prevent the injury.

The appellant's counsel insists that the plaintiff in this part of his declaration, to make it good, was bound to allege that the injury could have been prevented by the use of proper precaution, as without this allegation the injury may have been the result of inevitable accident. But the above allegation does expressly negative such supposition as it alleges that it "negligently and wrongfully propelled and drove its locomotive over said fat cattle." Had it been an inevitable accident, it could not have been alleged that the act was done "negligently and wrongfully," as this is the only specific objection urged to this declaration, and as I see no valid objection to it I conclude the court did not err in overruling the demurrer.

The next enquiry is : Did the court err in permitting the witness, Wood, to give to the jury the statement made by the engineer about an hour after the killing and injury of the cattle, and some distance therefrom when he was on the engine after it had run off the track? The engineer was sufficiently identified to permit this statement to go to the jury, if it had been otherwise

Syllabus 4.

proper to permit it to go to the jury. Unless this statement of the engineer was a part of the res gestœ, it must be excluded; for the defendant can not be bound by the statements or admissions of its agent made after the injury complained of had been committed, when regarded merely as admissions. A railroad company is not responsible for the declarations and omissions of any of its servants beyond the immediate sphere of their agency and during the transaction of the business in which they are employed. Thus the declaration of a conductor of a railway train, as to the mode in which an accident occurred, made after its occurrence, or those of an engineer made under similar circumstances are not admissible. Redfield's edition of Greenleaf, p. 135 §114 (a); *Va. and Tenn. R. R. Co.* v. *Sayers*, 26 Grat. 351, *Griffin* v. *Montgomery R. R. Co.*, 26 Ga. 111; *Robinson* v. *Fitchburg R. R. Co.*, 7 Gray 92.

It is true the declarations of an agent like his acts, if made at the time the act is done, will bind the principal, as constituting a part of the res gestœ. If the railroad company is bound at all by the declarations of an engineer in this case, it is only bound because they constitute a part of the res gestœ. Did they constitute a part of the res gestœ? They were made about an hour after the accident which is the basis of this suit happened, but while the engineer was still on the engine, it having been thrown off the track by this accident. Were these declarations a part of the res gesœt, or were they a narrative *merely* of a past occurrence? If the first they were evidence; and if the last they were not, no matter how soon after the occurrence they were made. See *Corder* v. *Talbott*, 14 W. Va. 277; *Brown* v. *Lusk*, 4 Yerg. 240; *Commonwealth* v. *Harwood*, 4 Gray 41.

It sometimes happens that the declaration is made so soon after the occurrence, that the court has great difficulty in determining whether it is a part of the res gestœ or not; and sometimes a difficulty arises in fixing a limit to what constitutes the occurrence, with reference to

1879
Special Term.

Hawker
v.
B. & O. R. R. Co.

which it is claimed that a declaration or act is a part of the *res gestæ*. Thus in *The Insurance Company* v. *Mosley*, 8 Wall. 397, the question in controversy was whether Mosley had died by reason of injuries which had arisen from an accident. His wife proved that he got up and went down the stairs about midnight. When he came back he said he had fallen down the stairs and almost killed himself; that in falling he had hit and hurt the back of his head; his voice trembled, and he was faint and vomited. He continued to suffer and died on the third day after. The majority of the court thought these declarations made to the wife were under these circumstances a part of the *res gestæ*, and admissible as such in evidence to prove the accident. The court says: "Here the principal fact is the bodily injury. The *res gestæ* are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress." But from this opinion Judge Clifford dissented in a long and able opinion, in which Judge Nelson concurred.

In the case of *Hanover Railroad Co.* v. *Coyle*, 55 Pa. St. 402, where a peddler's cart had been overthrown by a railroad car and a suit instituted by him for the injury, the plaintiff was permitted by the court below to prove the declarations of the engineer at the time of the accident, for the purpose of showing the train was behind time, and thus show carelessness and negligence as a part of the *res gestæ*. The Supreme Court say: "The record shows no bill of exceptions to this evidence; but if it did, we cannot say that the declaration of the engineer was no part of the *res gestæ*. It was made at the time of the accident, in view of the goods strewn along the road by the breaking up of the boxes; and it seems to have grown directly out of and immediately after the happening of the fact. The negligence complained of being that of the engineer himself, we cannot say that his declaration, made upon the spot, at the time, and in view of

the effects of his conduct, are not evidence against the company as a part of the transaction itself."

Whatever may be the difficulty in some cases of determining what declarations are a part of the *res gestœ*, and what merely the relation of a past occurrence, I do not think there is much difficulty in determining in this case, that the statement of the engineer, made an hour after the occurrence which is the basis of this suit, that is, after the killing and injuring of the cattle, and made some three hundred yards from where the accident occurred, cannot be regarded as a part of the *res gestœ*. They must, it seems to me, be regarded as a relation of past events merely, as much so as if the statements had been made the next day. The fact that the engine which had been thrown from the track when the accident occurred was still off the track when these declarations were made, it seems to me, has no bearing on the question ; for the throwing of the engine off the track was not the principal fact to be shown. Indeed it had nothing to do with the subject of enquiry before the jury, the manner in which the cattle had been killed. It was, it is true, one of the consequences which followed the killing of the cattle. But if it had been so injured that it could never have been again put on the track, it would hardly be said that this would authorize the declarations of the engineer, made at an indefinite period afterwards, to be received as evidence, because the engine was still off the track because of this accident.

This conclusion is, I think, fully sustained by the authorities. Thus in *Laly* v. *The Hudson River Railroad Company*, where the suit was for alleged negligence in running against the plaintiff, the plaintiff was allowed to prove by a policeman, who was present when the accident occurred, that he being called on by the crowd then present arrested the driver of the car, and while getting out of it and out of the crowd being asked why he did not stop the car, he said that the brake was out of order. And the Court of Appeals reversed the case, be-

cause this evidence was admitted, holding that this declaration of the driver was not a part of the *res gestæ*. It was no part of the driver's act for which the company was sued. The court say: "It was not made at the time of the act so as to give it quality and character. The alleged wrong was complete, when he made the statement, and the driver was only endeavoring to account for what he had done."

So in *The Belfontaine Railroad Company* v. *Hunter, adm'r,* 33 Ind. 335, the court decided that in an action against a railroad company by an administrator to recover damages for the death of his decedent, occasioned by the collision of a locomotive and train of cars and a wagon in which the decedent was crossing the track, that the declarations of the fireman employed on the lomotive at the time of the collision, made on the arrival of said train bearing the body of the deceased at a station one mile from the place of the accident, were not admissible as a part of the *res gestæ*. And in *Lum* v. *Bryant,* 9 Gray 245, in an action to recover damages sustained by a collision between the defendant's and the plaintiff's carriage, evidence that the defendant's servant, who had charge of his carriage, immediately after the collision, and while the defendant was being taken from his carriage, and while the crowd was about, said the plaintiff was not to blame, yet the court held that this declaration of the defendants was not admisible as a part of the *res gestæ*. The court say: "It was made after the accident occurred and the injury to the plaintiff's carriage had been done. It did not accompany the principal act or tend in any way to elucidate it. It was only the expression of opinion about a past occurrence and not a part of the *res gestæ*." It is not more competent because made immediately after the accident than if made a week or a month afterwards. See *Land* v. *Tyngoborough,* 9 Cush. 36."

The court therefore erred in the case before us in ad-

mitting these declarations of the engineer made an hour after the accident as a part of the *res gestœ*.

1879
Special Term.

Hawker
v.
B. & O. R. R. Co

Syllabus 2.

The next enquiry is: Did the court err in the instructions it gave the jury? The only objection urged by the appellant's counsel to the first instruction given by the court is, that under the declaration filed in this case the plaintiff could only recover, if the defendant's servants were guilty of wrong and negligence after they saw the plaintiff's cattle on the track; and under this instruction the jury are directed to find for the plaintiff, if the injury might have been avoided by the exercise of proper and reasonable care and caution on the part of the defendant's servants, as well before as after they saw the cattle on the road. We have seen, that the plaintiff by his declaration has specifically stated, that the negligence of the defendant on which he bases his action occurred after the defendant saw the cattle of the plaintiff on the railroad. Under such a declaration he cannot recover, if there was no negligence or wrongful act done by the defendant's servants after they saw the cattle on the road, no matter how negligent they may have been before, and though the accident was caused by negligence occurring before the cattle were seen on the road. There was no necessity for the plaintiff to allege in his declaration what were the negligent acts of omission or commission of the defendant, or when they took place, specifically; but having done so, his proof must correspond with his allegations in his declaration, or he cannot recover.

Had the plaintiff not made these unnecessarily specific allegations in his declaration, this first instruction would have been entirely unobjectionable; but under this declaration it was calculated to mislead the jury, and to lead them to infer that they could find for the plaintiff, though they believed the accident inevitable after the cattle were seen, if it was occasioned by the negligence of the defendant's servants before the cattle were seen, and could by proper care before that time have been avoided. This instruction should not therefore have been given.

The second instruction given is also objectionable, as under it the jury would be justified in finding for the plaintiff, if the defendant did not use any care in or caution to avoid the injury, though the facts proven might satisfy the jury that the accident was unavoidable, and could not have been prevented by anything the defendant's servants could have done. If it was unavoidable by any amount of care, the failure to use any care or caution to avoid the injury would not make the defendant liable. See *Flutes* v. *Chicago & Rock Island Railroad Co.*, 35 Ia. 191. This instruction should have been qualified so as to read : " If the jury believe from the evidence the plaintiff's cattle wandered on the defendant's railroad without his knowledge, and being there were killed or injured by a passing train of cars in charge of the defendant's servants ; and if they further believe from the evidence that the servants of the defendant in charge of the train could by the exercise of proper and reasonable care and caution, after they saw the cattle of the plaintiff on the railroad track, have avoided injury to them, and they failed to use such reasonable care and caution, the jury should find for the plaintiff."

If the plaintiff had not by his declaration confined himself to the proof of negligence after the cattle were seen on the railroad track, these words in this instruction, "After they saw the cattle of the plaintiff on the railroad track" should have been omitted. I have purposely omitted in this modification of this instruction the words, "That whilst the plaintiff was exercising ordinary care over his cattle mentioned in the declaration they temporarily escaped from his enclosure," because by the decision of this court his permitting his cattle to run at large would not be such contributory negligence as would preclude him from recovering in this action if the case was made by him stated in this instruction. See *Blaine* v. *Chesapeake and Ohio Railroad Company*, p. 252. The first clause of the defendant's instruction propounds the law of this case correctly; but it would obviously

have been erroneous if the plaintiff had not by the manner in which he has drawn his declaration confined himself to the proof of negligence after the defendant had seen the cattle on the railroad.

The latter part of this instruction was clearly wrong. The general rule is that what constitutes negligence is a question of fact to be submitted to the jury, unless where the facts are undisputed and the results of those facts unquestionable, either as proving or disproving, negligence. If the facts are conceded, or if in an instruction they be hypothetically assumed, still if the inference in regard to negligence or want of negligence from such facts is doubtful, and would depend on the general knowledge and experience of men, the court cannot decide whether such facts constitute negligence, or not; but it must be left to the decision of the jury. *Gaynor* v. *The Old Colony and Newport Railway Company*, 100 Mass. 208. The court, therefore, could not properly instruct the jury that under the circumstances stated in the instruction asked for by the defendant's counsel, that the turning of the steam from the "stop cock" of the cylinder was all that that was required of the defendant, and if this were done, the defendant was not guilty of negligence; nor would the court give a contrary instruction. The jury must determine upon such a state of facts, whether the defendant was, or was not, guilty of negligence; and the court could not properly instruct the jury that they were bound to take the experience of the engineer as to what was the best means of frightening cattle as correct. The jury must, without the interference of the court, give to the testimony of the engineer, and to his experience, the weight to which in their judgment they are justly entitled. The court of course erred in not granting a new trial.

For the reasons above stated we express no opinion as to the weight of evidence, as this case must be tried over *de novo* by a jury. Of course when this case is remanded to the circuit court, it must permit the plaintiff to amend his declaration, if he asks so to do.

The court also erred in giving judgment for interest on damages found by the jury prior to the day the judgment was actually entered, that is, the 7th day of May, 1878. The judgment entered by the circuit court erroneously gave interest from the first day of the term at which the judgment was entered, that is, from April 18, 1878. The 18th section of chapter 131 of the Code of W. Va. page 628 provides that every judgment or decree for the payment of money, except when it is otherwise provided by law, shall bear interest from the date thereof. If this section stood alone it might perhaps be argued that as a judgment-or decree, whenever rendered, for some purposes is regarded as though it were rendered on the first day of the term, this interest should be under this statute from the first day of the term. But the 14th section of the same chapter page 627 shows clearly that this was not the meaning of the law; for this section provides that in an action on a contract the jury may allow interest on the principal due, or any part thereof, and in all cases shall find the aggregate of the principal and interest due at the time of the trial, and judgment shall be entered thereon with interest from the date of the judgment. This obviously does not mean with interest from the first day of the term; for the jury had already been directed to aggregate the principal and interest to a day, which must generally be subsequent to the first day of the term. Its meaning is obviously that the judgment shall be with interest from the day it is actually rendered; and we must construe the same words in the 18th section to have the same meaning, that is, the judgment in any action, unless it is otherwise provided by law, should bear interest only from the day it is actually entered of record.

The judgment of the circuit court of Marion county of May 7, 1878, must therefore be reversed and annulled; and the plaintiff in error must recover of the defendant in error his costs in this Court expended; and this Court proceeding to render such judgment, as the circuit court ought to have rendered, doth sustain the defendant's mo-

tion to set aside the verdict of the jury rendered May 4, 1878, and to award it a new trial; and the said verdict is hereby set aside and a new trial awarded the defendant; and this case is remanded to said circuit court to be further proceeded with according to the principles laid down in this opinion and further according to law.

1879
Special Term.

Hawker
v.
B. & O. R. R. Co.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED. CAUSE REMANDED.