## WELCOME BEMIS v. CONNECTICUT & PASSUMPSIC RIVERS RAILROAD COMPANY.

*Railroad. Trespasser. Ordinary Care and Diligence.*

It is settled law in this state that the obligation upon railroad companies to build a fence along their roads only extends to the owner or rightful occupier of the adjoining fields, and not to mere trespassers therein.

When an animal is wrongfully on a railway track as a train is approaching, the first and paramount duty of the company and servants when the animal is discovered, is to attend to the safety of the passengers and the property on the train or otherwise lawfully on the track, and as to such the law demands the exercise of the highest degree of care and diligence. The next object of attention in such case is the safety of their own property. And while discharging these duties they are bound to exercise ordinary care to avoid injury to the trespasser. Therefore ordinary care and diligence in regard to the trespasser would be such degree of care and diligence as would be consistent with such higher obligations.

Where an engineer runs a train with ordinary care and vigilance, and watches the track in advance as much as he can consistently with his other duties, he discharges all obligation which the company is under to one whose animal is on the track through the wrongful act or neglect of the owner, unless the safety of the passengers and interests of the company would allow the train to be stopped or its speed checked.

When proper care and vigilance are being exercised in respect to these other interests, neither the mere fact that the speed of the train was not checked while it was approaching the animal, nor the mere fact that the engineer did not see it until so near it that he could not avoid the accident, tends to show any want of care as to the animal.

Engineers are required to use the ordinary means, the bell and whistle, to remove animals from the railway track; but when such means fail, then the question whether the engineer should stop the train, check or increase its speed, if in his power, would depend upon what the safety of the passengers and train required, and whatever is required in this respect, under the circumstances, would be allowable as to property wrongfully on the track.

ACTION ON THE CASE, for killing or injuring the plaintiff's bull by the defendants' engine. Plea, the general issue. Trial by jury, June term, 1867, Caledonia county, STEELE, J., presiding. Verdict for the plaintiff.

The plaintiff gave evidence tending to show that on the 15th of September, 1865, his bull was run over or hit by the defendants' engine, while running a train from Lyndon north toward Barton; that the animal was kept on the east side of the Passumpsic river, in the plaintiff's pasture; that the track of the defendants' road is on the west side of said river; that one Morgan owned a piece of land east of the railroad track, between the road and the river where he kept his cows; that the defendants' fence was not suit-

able or of lawful height between Morgan and the road ; that the animal crossed the river from the plaintiff's pasture into Morgan's field, and broke over the fence into the enclosure of the defendants' road.

There was no pretense that the animal was rightfully in Morgan's field. The plaintiff gave evidence tending to show that the animal might have been seen for seventy-five rods on the track south of the point where the same was run over ; also that the speed of the train can be checked in that distance so as to avoid accident, or even in fifty rods ; also that it was an up grade where the animal was hit, and that the train could on that account be checked more easily. The plaintiff also proved that the train was that night behind time, and argued that they were driving with unusual speed, from that fact and the fact that the bull was found after the injury at considerable distance from the track.

The defendants' fireman testified that they were driving with usual speed, but did not whistle till about the time they struck the bull, and did not see him until they whistled. The defendants offered evidence tending to show that for some distance south of where the animal was run over, the dump was about four feet higher than the side surface of the defendants' enclosure ; that at the time of the accident the train was running at its usual speed, at the rate of twenty-five miles an hour, and that it was a level grade ; that the engineer only discovered the animal on the track or near it, so as just to cause the alarm of danger to sound, when the cow-catcher struck him, and broke both hind legs and injured his fore shoulder. The accident happened about six o'clock, P. M.

" The court instructed the jury that the defendants were bound to fence only as against cattle lawfully upon lands adjoining them, and as the plaintiff's bull was not rightfully on the land of the adjoining proprietor, Morgan, the plaintiff could not recover on account of any insufficiency in the defendants' fence, and the only question was whether the accident occurred by reason of a lack of due care in running the train. On this subject the defendants claimed and requested the court to instruct the jury that the defendants were only liable for gross and wilful negligence. The court refused to so charge, but did instruct the jury on this point as follows : The defendants were bound to exercise due care in

the speed of their train, to use due vigilance while running their train in looking out for obstacles on the track, and due diligence in checking their speed if animals are seen wrongfully on the track. The degree of care and prudence in these respects, to which the defendants are held toward parties whose own fault contributes indirectly or remotely to the accident, is not so great as is required towards parties in the right, but only ordinary care and prudence, such as may fairly and reasonably be generally expected of engineers in running a train. If by the exercise of such degree of diligence, the engineer would have perceived the animal in a position where danger should reasonably have been apprehended, he should have so checked his speed as to avoid the accident if in his power. In determining whether the engineer was using this degree of care, and whether by want of it the accident occurred, you will consider the nature of the grade and curves, and of the power used, the length of the road over which the point of this accident could be seen before it was reached, the speed of the train and the situation of the animal, so far as the evidence gives any light upon the subject, and all the circumstances so far as they appear from the testimony, and if on the whole you are satisfied that the plaintiff has made out by a fair balance of testimony that the accident was occasioned by a lack of ordinary care and prudence on the part of the engineer, the defendants are liable, otherwise not."

To the refusal to charge as requested, and to the charge as given, so far as it conflicts with said request, the defendants excepted.

*Bliss N. Davis*, for the defendants, cited upon the question as to what care and diligence railway companies must exercise towards cattle wrongfully on their track, *N. Y. & E. R. R. Co.* v. *Skinner*, 19 Penn. State, 298; 1 Am. Law Reg., 97; 5 Ib., 49; Red. on Railw., 375, n. 5; 12 Eng. L. & Eq., 520, notes.

*Thomas Bartlett*, for the plaintiff, cited to the same point, *Kerwhaker* v. *Cin. R. R. Co.*, Am. Law Reg., April No., 1855, vol. 3, p. 341; *Quimby* v. *Vt. Cen. R. R.*, 23 Vt., 387; *Trow* v. *Same*, 24 Vt., 487; *Jackson* v. *Rut. & Bur. R. R.*, 25 Vt., 150; 28 Vt., 180.

The opinion of the court was delivered by

WILSON, J.   It is settled law in this state that the obligations upon railroad companies to build a fence along their road only extends to the owner or rightful occupier of the adjoining fields, and not to mere trespassers there.   The case shows that the plaintiff's bull was a trespasser upon the defendants' premises, presumed to have escaped from the plaintiff's enclosure and strayed upon the track, through the insufficiency of his fences, which, in law, is the same as if the plaintiff had suffered the animal to go at large, without any restraint whatever.   *Jackson* v. *R. & B. R. R. Co.*, 25 Vt., 150.   The plaintiff has no remedy against any one, if the animal was killed or injured without negligence, at the time, in the management of the engine.   *Jackson* v. *R. & B. R. R. Co.*, 25 Vt., 150 ; 12 E. L. & Eq., 520.   The important question is, what degree of care and diligence were the defendants bound to exercise in respect to the plaintiff's property while it was thus unlawfully upon the defendants' premises.   Upon this question, the court below told the jury that " the defendants were bound to exercise due care in the speed of their train, to use due diligence, while running their train, in looking out for obstacles on the track, and due diligence in checking their speed if animals are even wrongfully on the track."   What amounts to ordinary care on the part of a railroad company and their agents, depends upon the nature of their employment, the condition of their road, locomotives and cars, the duty of the agents in running the train, and the circumstances under which the injury occurred.   It is unquestionably true that persons engaged in building railroads, locomotives and cars, and in running the train, are justly held to a higher degree of skill, care and diligence than that which is requisite in the ordinary pursuits of life.   For the protection of the persons and property of individuals in charge of the agents of the company on the train, the company are held to exercise the highest degree of care and diligence.   They should be held to exercise such care and diligence as the perils of that mode of conveyance require, and with a due regard to this paramount obligation and duty, they are bound to exercise what would be, under the circumstances, ordinary and reasonable care to avoid unnec-

essary injury to property not in their charge, even though such property is unlawfully on their railway track. It is with regard, mainly, to this paramount object, that the usual or general speed of trains on our railroads is regulated. What constitutes due care in the speed of the train depends chiefly on the condition of the road, in respect to its track, grade and curves, the height or depth of the track above or below the margin of the road, its liableness to obstructions, by natural and unavoidable causes, the crossings, if any, the condition of the locomotive and cars, the distance from the train the engineer would be able to discover an obstacle on the track, and the skill and experience of engineers and others in charge of the train. The condition of the road constitutes a very important consideration in determining what speed of the train would be reasonable, with reference to the persons and property on the train. By the condition of the road, I mean its condition as constructed for running trains over it, its fitness for that purpose and its liableness to be obstructed by natural and accidental causes. But railroad companies are not bound to regulate the general speed of their trains on the assumption that the track will be unlawfully obstructed. To require this of such companies would be against all reason. It would subject them and their interests, and the persons and property on the train, to the will and control of trespassers, which would be little less than offering a reward to wrong-doers, at the risk of the lives and property of the innocent. When the speed of the train is such as the condition of the road, locomotive and cars, and the skill and experience of those in charge of the train, require for the safety of the passengers and property on the train, the company should not be subjected to liability for damage to a mere trespasser whose property was injured by being unlawfully on the track, unless such damage was occasioned by the neglect of the company, or their agents, to exercise that degree of care and diligence that would have been required of them if the obstruction had not been there, or by their neglect to exercise that degree of care which, under the circumstances of the case, might have been exercised in respect to the property of a trespasser without peril to the train or its passengers. From this view of the subject, it follows that if

running the train at the rate of twenty, twenty-five or thirty miles an hour is reasonable speed, on a given road or piece of road not known by the company or its agents in charge of the train to be obstructed, it is reasonable speed with reference to the question whether an obstacle will unlawfully go, or be placed upon, the track while the train is approaching. It is unquestionably true that railroad companies are responsible that their agents in charge of trains shall exercise due diligence in looking out for obstacles on the track, whether such obstacles be accidentally and unavoidably or unlawfully there. This care is demanded for the safety of persons and property on the train, and the best interests of the company, as well as the demands of the public, require its exercise. In regard to the speed of the train when approaching an obstacle unlawfully on the track, whether it would be the duty of the company to check the speed of the train, on account of such obstacle, would depend on its nature, the distance of the train from it at the time it was discovered, and in case of animals or an animal wrongfully on the track, whether the use of the usual means, namely, the bell, whistle and nearer approach of the train, would be likely to drive them off the track ; and more especially it would depend upon the question whether the safety of persons and property on the train, or the interests of the company, require that the speed be checked where the obstacle is discovered in time to do so. The first and paramount duty to be observed, when danger is apprehended from such obstruction, is the safety of persons and property on the train, or otherwise lawfully on the track, and as to such the law demands the exercise of the highest degree of care and diligence by the company and their agents. The next object of the attention of the agents of the company is the safety of their own property. They are bound, while discharging these higher obligations and duties, and in the exercise of their right to protect the property of the company from injury to which it is exposed by the unlawful act or neglect of another, to exercise ordinary care to avoid injury, even to a trespasser. But the person whose property is unlawfully upon the railway track has no right to expect it will be protected unless it can be done consistently with the higher obligations and responsibilities resting on the

agents of the company. The ordinary means employed to drive cattle off the track are the noise of the train, and the noise of the bell and whistle, and these are generally sufficient for that purpose, without checking the speed of the train. The noise of a running train, when approaching an animal and near it, is generally sufficient to drive it from the track, and this agency is continually operating while the train is running, and it would have more or less effect to remove such obstacle, even though the animal was not discovered by the engineer. The other means above indicated should be seasonably employed, that is, they should be employed immediately upon the discovery of such obstruction, and the engineer is bound, while running the train, to exercise ordinary care in looking out for obstacles on the track, so that he may seasonably employ such means to remove them as are ordinarily sufficient for that purpose. An engineer, when running his train with ordinary care and vigilance, and examining the track as far as consistent with his other duties, has discharged all obligations which the company are under to one whose animal is on the track through the wrongful act or neglect of the owner, unless the safety of the passengers and interests of the company require, or would allow, the train to be stopped, or its speed checked, and it can be so done without injury. And in such case what the interests of the passengers or company require is ordinarily best determined by an experienced engineer. As to property wrongfully on the track, the company should be responsible that their agents act in good faith and with common prudence. If an engineer use such means as are usually sufficient to drive cattle from the track, without unnecessary injury, the company should not be held liable to the owner of property injured while unlawfully on the track, even though he misjudged as to the best means to be used.

It follows from these remarks, that, in a suit against a railroad company, in favor of the owner of an animal injured by the locomotive while the animal was unlawfully on the railway track, and the train was running at the usual speed of running the train at and near the place where the injury occurred, the mere fact that the speed of the train was not checked, while it was approaching the animal, does not tend to show any want of ordinary care

or diligence on the part of the company, or the agents, in running the train, in respect to the rights of the owner of the property so injured. But in a suit in favor of a passenger who was injured by the train being thrown off the track by such unlawful obstruction, it is obvious, for the reasons before stated, that the company should be held to a higher degree of care and diligence than would be required of them in a suit in favor of the owner of the animal, for damage to the property which contributed to the injury of such passenger. As to the persons and property on the train thus thrown off the track, the circumstances might show it was the duty of the agents of the company to check the speed of the train, if in their power. We have no occasion to decide or consider the circumstances under which it would be the duty of the engineer to check the speed of the train when a human being is unlawfully on the track. That the life of a human being is of more consequence, and of greater value than mere property, does not admit of debate, but in attempting to save the life of a person unlawfully on the track of the road, I think the law would not allow any relaxation of the rule in respect to the requisite degree of care and diligence which the company and their agents would be bound to exercise for the safety of persons *lawfully* on the train or track. The distinction between the different degrees of care and diligence requisite in the various pursuits and relations of life does not exist by force of arbitrary rules merely, but has its origin in those moral precepts which commend themselves to the understanding, and should meet the approval of all men. This distinction becomes more apparent when considered with reference to the different objects of care and diligence, and the obligations and duties which persons in the *right* owe to those in the *wrong*, especially where, in *law*, no privity exists between them, and compared with those relations which arise from contract, and imply mutual confidence and trust. The company must, from the very nature of their employment, in order to the security of their passengers and workmen, and the enjoyment of their road, have the right, at all times, to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy, even by the former owner, in any mode and for any purpose. The right of the company is, for all pur-

poses of the road, the same as that of an owner in fee, as was decided in a late case in Bennington county. (Redfield on Railways.)

The fact that the business of a railroad company is one of extraordinary peril to cattle coming upon the road, makes it of the first necessity that the owners of cattle, especially those to whom the company owe no duty in respect to fences, should restrain and prevent them from straying into the field of another, and from thence upon the track of the railroad. The plaintiff had no legal claim, either upon the defendants, or Morgan, the adjoining proprietor, to keep the railroad on the adjoining lands fenced for the security of the plaintiff's cattle. How far the omission of the defendants to maintain a legal fence against cattle wrongfully in Morgan's field, might be regarded as negligence in respect to the safety of passengers on the train, we have no occasion to discuss here. But it is clear there is in law no such privity between the plaintiff who may be remotely affected by such omission, and the defendants owing the duty, as will constitute culpable negligence. The omission of the defendants to maintain a legal fence as against the cattle of the plaintiff while they were wrongfully in Morgan's field, was at most, as to the plaintiff, an omission of a moral duty, but the neglect of the plaintiff to restrain his cattle was in violation of a legal duty he owed to the defendants, and the passengers and property upon the train ; the plaintiff was legally in fault, it was by his fault the road was obstructed. It has been held that where the injury arises neither from design nor from wanton and gross neglect, but simply from the neglect of ordinary care and caution, and the parties are mutually in fault, the negligence of both being the immediate or proximate cause of the injury, a recovery is denied upon the ground that the injured party must be taken to have brought the injury upon himself. But we do not recognize or admit the soundness of the doctrine of some of the cases that "a man is under no obligation to be cautious and circumspect toward a wrong-doer." For it is clear that even in the absence of any reciprocal obligation, there is an original moral duty enjoined upon every person so to conduct himself and his business,

or exercise his own rights, as not to injure another. But this moral duty ceases, it has no binding authority, when it cannot be exercised toward the wrong-doer consistently with the higher law of self protection, or the protection of those lawfully in the charge of another, in respect to which the legal obligation and moral duty concur. Applying these principles to the present case, it is clear that the charge of the court below can not be sustained. The substance of the charge is, that the defendants were bound to use ordinary care and prudence towards the plaintiff's property; that ordinary care and prudence bound the defendants to use due vigilance while running their train in looking out for obstacles on the track; that ordinary care and prudence towards the plaintiff's property, although it was wrongfully on the track, required the defendants to use due diligence in checking the speed of the train; and if by the exercise of such degree of diligence as might fairly and reasonably generally expected of an engineer in running a train, "he would have perceived the animal in a position when danger should reasonably have been apprehended, *he should have so checked his speed as to avoid the accident if in his power.*" The court then told the jury that in determining whether the engineer was using this degree of care and whether by want of it the accident occurred, they would consider the nature of the grade and curves and of the power used, the length of the road over which the point of the accident could be seen before it was reached, the speed of the train, the situation of the animal so far as the evidence gave any light upon the subject, and all the circumstances so far as they appeared from the evidence. It seems to us that the charge was calculated to mislead the jury. We can not infer from the charge that the duty the defendants owed to the passengers on the train when in peril, or the right the defendants had to protect their own property or interests from injury by the wrongful act or neglect of the plaintiff, was considered by the jury in determining whether the engineer was using ordinary care and prudence at the time the accident occurred; for the jury were by the charge confined to the consideration of matters upon which they could not have determined the question of such care and prudence as applicable to the facts of the case. The jury would very

naturally understand from the charge that ordinary care and prudence toward the plaintiff required the engineer to check the speed of the train if in his power, without any regard to the consequences that might have resulted therefrom to the passengers, train, or interests of the company. Such requirement of the engineer would amount to the highest degree of care and prudence towards the plaintiff's animal; it would make the safety of the plaintiff's bull, though wrongfully on the track, the first and paramount object of the attention of the engineer, and the safety of the passengers on the train, and the interests of the company, matters of secondary importance. It has been shown in the forepart of this opinion that the engineer was under no obligation to save or protect the plaintiff's property unless he could do so consistently with the higher obligations and responsibilities of the defendants to the passengers and property in their charge on the train. The running of the train at the usual and reasonable speed with reference to the safety of passengers and property in charge of defendants' agent, and with reference to the interests of the company, amounted to ordinary care and diligence as to the plaintiff's property while it was so on the track, and the fact it was there was not known to the engineer. The case does not show there was any testimony tending to prove that the speed of the train was unusual or unreasonable with reference to the safety of the passengers or property on the train when the track was not obstructed. The evidence does not tend to show any want of care or prudence at the time or after the engineer discovered the animal on the track, and it would seem that the engineer did use ordinary care and prudence towards the plaintiff's property, unless the failure of the engineer to discover the animal in time to have made any more seasonable effort to avoid the accident arose from neglect to use due vigilance in looking out for obstacles on the track. The case states that the plaintiff gave testimony tending to prove that the animal might have been seen for seventy-five rods on the track south of the point where the same was run over; also that the speed of the train could be checked in that distance, or even in fifty rods, so as to avoid accident. If we construe the testimony as tending to prove that the animal was on the track when the distance between the

44

animal and the train was seventy-five rods; that the engineer would have perceived the animal for that distance on the track if his eye, at that moment, had been directed to the point at which the accident occurred; and that the speed of the train could be checked in the distance before mentioned, it would not follow as a necessary or even probable conclusion that there was any want of vigilance or care in looking out for obstacles on the track. It will not do to say that an engineer is bound at all times while running a train to keep his eyes on the track for the distance of seventy-five or even fifty rods forward of the train when he has no reason to apprehend that the track is obstructed, for his engine or some other object near the train may necessarily require his attention and care and a skilful and prudent engineer would discharge such duty when he could reasonably suppose the track was free from obstruction. The train was running at the rate of twenty-five miles an hour, therefore if the attention of the engineer at the moment the animal might first have been seen on the track was necessarily directed to his engine or some other object near the train which for the time prevented him from viewing the track as far as the point at which the accident occurred, the fact that he did not perceive the animal until it was so near the train that the engineer could not avoid the accident, does not tend to show any want of care as to the plaintiff's property so wrongfully on the track.

Ordinary care as to the property of a trespasser would not allow the engineer to neglect the more important duties he owes to the train and its passengers. It does not appear that there was anything in the situation or condition of the road, at or near the point of the accident, requiring the engineer to keep his eyes fixed constantly on the track for the distance of fifty rods forward of the train, or to check his speed on that part of the road. There is nothing in the case tending to show that the engineer had any reason to believe or even suspect that the track was, from any cause or in any manner, obstructed. The case shows that the engineer was running the train prudently and safely in regard to the contract obligations of the defendants and the interests of their road. The court told the jury that if by the exercise of ordinary

care and prudence " the engineer would have perceived the animal in a position when danger should reasonably have been apprehended, *he should have so checked his speed as to avoid the accident if in his power.*" The rule indicated by this part of the charge makes no distinction between the rights ·of the trespasser and those rights arising from contract obligations ; it allows the exercise of no discretion by the engineer in time of danger, but makes it the imperative and paramount duty of the engineer to protect the property of the trespasser if in his power. While it it true that the defendants are held responsible that their engineer and other agents in charge of the train possess the requisite degree of skill and experience which fit them to exercise sound discretion and judgment and that they will use such degree of care and diligence as that employment and the peculiar circumstances by which they are surrounded require, it must be conceded that such skill and experience entitle an engineer to exercise some discretion in respect to the means to be used in order to protect the most important interests imperiled when the whole can not be saved. We assume, in the absence of any testimony to the contrary, that the defendants' engineer did possess the requisite amount of skill and experience to run the locomotive with ordinary care. It appears from cases cited by the defendants' counsel that the courts, in some of the states, hold that railroad corporations are liable to a trespasser upon their premises only for wanton or intentional injury. But in the 24 Maryland, 84, 108, and 3 Ohio, 172, the courts of those states hold that such corporations are bound to use ordinary care as to property even wrongfully on their railway track. We think the exercise of this degree of care toward a trespasser is just in principle and necessary in order to protect other more important interests involved. But the application of the principle, to the determination of cases like the present, should be made with a view to allow such corporations to discharge their paramount duties and obligations arising from contract, express or implied, which exist between them and every person on the train, or standing in such a relation as requires care on the part of those in charge of the train. Prudent men, in the management of their own affairs in case of impending danger,

would protect the most important interests even though the protection of such interests rendered it necessaay to sacrifice interests of less importance. They would make the same discrimination and in favor of their own rights and interests when in peril by the wrongful act or neglect of any other person; and they would understand that ordinary care in such cases does not require *persons in the right* to take any risk by an effort to save the property of the person by whose wrongful act the peril was occasioned. And the same principle is applicable as between railroad corporations and the mere trespasser upon their premises. Ordinary care towards the property of a trespasser does, not require or allow such corporations to run any risk as to the life of any person on the train, or loss of any property there, in order to protect property wrongfully on their railroad track. If a person whose property is wrongfully on a railroad track could require the engineer to guard it from injury while there at the risk of persons and property on the train, the number of persons who would venture to take that mode of conveyance would be small.

Engineers can safely use and are required to use the ordinary means to remove animals from the railway track; but when such means fail, then the question whether the engineer should stop the train, check its speed, or even increase the speed, if in his power, would depend upon what the safety of the passengers and train required, and whatever their safety or the safety of their property required under the circumstances, would be allowable as to property so wrongfully on the track. Upon the case presented by the bill of exceptions, the grounds on which the jury could legitimately have found a verdict for the plaintiff are not apparent; but as the case is to be remanded for a new trial, we express no further opinion as to the tendency of the evidence.

The judgment of the county court is reversed and the cause is remanded.