## CHARLESTON.

### MAYNARD *v*. NORFOLK & W. R. Co.

Submitted January 16, 1895—Decided March 30, 1895.

1. RAILROAD COMPANIES—LIVE STOCK—NEGLIGENCE.
   In order to charge a railroad company with damages for killing stock straying upon its track, negligence on the part of the company must appear, and the burden of showing it rests upon the plaintiff.

2. RAILROAD COMPANIES—CATTLE GUARDS.
   The provision of section fourteen of chapter forty two of the Code, requiring railroad companies to construct and maintain cat-

tle guards upon land condemned, is for the benefit of the land-owner; and therefore the mere omission to do so will not entitle another party, whose stock is injured while straying upon the railroad track, by trains, to recover damages, though, but for the want of it, the stock would not have been where it was injured.

E. E. WILLIAMS and CAMPBELL & HOLT for plaintiff in error, cited Code, 1891, c. 42, s. 14; 15 W. Va. 270; 1 Redf. Railw. (4th Ed.) 465; 25 Ver. 150; 42 Ver. 375; Redf. Am. Ry. Cas. 351, note; 34 W. Va. 206; 35 W. Va. 565-6

R. H. HOYLE, B. H. OXLEY and E. W. WILSON for defendant in error, cited 35 W. Va. 438.

BRANNON, JUDGE:

In an action brought by Maynard against the Norfolk & Western Railroad Company before a justice and carried by a writ of *certiorari* to the Circuit Court of Logan county, Maynard recovered one hundred and forty dollars damages for killing his horse—the recovery being, not by verdict, but on a finding of the court in lieu of a jury—and the company sued forth this writ of error.

It is settled that to charge a railroad company for killing stock straying upon its track, the owner of the stock must prove negligence on the part of the company. There are so many cases heretofore decided by this Court holding this principle and discussing this subject that it would be a waste of time to further discuss it here. *Blaine* v. *Railroad Co.,* 9 W. Va. 252; *Baylor* v. *Railroad Co., Id.* 270; *Hawker* v. *Railroad Co.,* 15 W. Va. 628; *Washington* v. *Railroad Co.,* 17 W. Va. 190; *Layne* v. *Railroad Co.,* 35 W. Va. 438 (14 S. E. Rep. 123); *Hoge* v. *Railroad Co.,* 35 W. Va. 562 (14 S. E. Rep. 152.

*Johnson* v. *Railroad Co.,* 25 W. Va. 570, pointedly holds, as those cases in effect do, that the burden to show negligence is upon the plaintiff.

It is useless here to recite the evidence, as it would be no precedent for future practice, and it is necessary only to state legal principles arising from the facts as they appear to us. We think there is a failure to show negligence on

the defendant's part—a clear inadequacy of evidence to sustain the action on that basis.

There is another question of law proper to be decided. Touching it I make the following extract from brief of counsel which I regard a fair statement of facts pertinent and necessary for the understanding of the question, and as a presentation of the law of that question: "In order that the second question may be clearly understood, it will be necessary to call attention to the location of the place where the accident occurred. The plaintiff lived a short distance east of the town of Williamson. To the east of him, and following the railroad track, the witness James Cary lived. And still further eastward, and entirely disconnected from the plaintiff's place, is what is known as the 'Widow Lawson Farm.' Through the latter farm the railroad company condemned its right of way, and the place was cleared and fenced at the time of condemnation; and it became the duty of the company, in consequence of section fourteen of chapter forty two of the Code, to fence both sides of its track, and put in suitable cattle guards through the land so condemned, and it did construct the required fences, and place a cattle guard at the eastern line of the Lawson place, but omitted to put one at the western line thereof. This made an inclosure on three sides, with an opening at the west, into which, presumably, the plaintiff's horse strayed from the commons below; and the question is, does the omission on the part of the railroad company to put in Mrs. Lawson's cattle guard render it liable for the plaintiff's horse, killed on a part of its right of way from which such a guard would have excluded it? It will be observed that leaving the guard out simply extended and increased the size of the common through which the railroad ran, and upon which the horse was already grazing. The absence of the guard did not admit the animal to the railroad track. He was already grazing upon an inclosed portion of it, and the omission of the guard simply enabled him to change his position on the track, and make choice of a place in which to die. For whose benefit is section fourteen of chapter forty two intended? That portion of the section involved reads as follows:

'And in all cases when the property taken under this chapter is by a railroad company, and is land which has been cleared and fenced, the said railroad company shall construct and forever maintain suitable farm crossings, cattle guards and fences on both sides of the land thus taken.' The very terms of this statute indicate pretty clearly the object of the legislature. It only required certain portions of the track to be fenced, and those portions are located and determined by the manner in which the title thereto was acquired, whether by condemnation or not, and the character of the land at the time of its acquisition, whether fenced and cleared or not. No right of way purchased or donated, or that runs through unimproved land, whether condemned or not, need be fenced. What is the meaning of such a restricted requirement? Why did not the legislature require railroad companies to fence their tracks from end to end? Why not compel them to fence through woodland, through cleared but unfenced common, through cleared and fenced lands donated or purchased? Had it been the object of the legislature, by this act, to benefit or protect any one but the adjoining proprietor—that is, the public at large—it would have required fences wherever that public was likely to come in contact with the track. The public and its property is just as likely to come upon the right of way where it has been purchased or donated through improved lands, or where it has been condemned through wild lands, or open common, as it is at a point where it has been condemned through improved land. If the legislature had for its object the protection of the public and its property by the construction of fences, is it not a little peculiar that it should require one mile of track to be fenced, and permit ten miles to lie open? The inference from this is almost irresistible that the legislature did not have the community at large in mind at all. It did not even contemplate the greater safety of passengers upon railroad trains. It simply undertook, by this restricted requirement, to make railroad companies place the landowner, whose cleared and fenced land they had taken by eminent domain, back in the position in which they found him, or as nearly so as practicable. Here

he was not giving, but resisting, and without an opportunity to impose conditions; refusing to sell, and in consequence without opportunity to stipulate for fences. His wheat field is split in two, and a strip from eighty to a hundred feet wide taken thereout. Before he had one field, inclosed upon all sides. Now he has two, each of which is open upon one side, and his crops are at the mercy of the 'razor back.' The law has permitted this to be done without the owner's consent, and, furthermore, directed the commissioners who assessed his damage not to take the cost of fences made necessary by the taking into consideration at all; providing in lieu thereof, however, as above quoted, that the company condemning shall inclose the two newly made fields by fencing both sides of its track clear through—thus by statute giving back to a man his fences, whose fences had been by statute taken without his consent. Unquestionably the obligation is imposed for his benefit alone. No one else would seem to have any interest in the matter whatever. So far as any one else is concerned, the company may leave its track open, and that person may let his cattle run at large. The company is simply required to exercise ordinary care to avoid injury to cattle so running at large when they come upon its track, and the owner thereof, so permitting them to run at large, takes the risk of injury to them from unavoidable accident. *Baylor* v. *Railroad Co.*, 9 W. Va. 270. The intention of the legislature in the passage of this statute would appear to be so manifest as to dispense with the citation of authorities in support of our view; but, as there has been more or less discussion of the subject before our Circuit Courts, it might be well to indulge in a few: 1 Redf. R. R. (4th Ed.) p. 465, par. 3; *Jackson* v. *Railroad Co.*, 25 Vt. 150; *Bemis* v. *Railway Co.*, 42 Vt. 375; Redf. Am. Ry. Cas. note, p. 351. The latter part of the paragraph first above cited from Redfield on Railways read as follows. 'The obligation to make and maintain fences, both at common-law and under the statute, applies only as against the owners or occupiers of the adjoining close.' Chief Justice Redfield, in the case of *Jackson* v. *Railroad Co.*, *supra*—an extract from which is appended as a note to page 351 of his American

Railway Cases, above cited—used the following language: 'We can not conceive, then, how any one can be said to be directly interested in the maintaining of fences upon a railway, beyond the adjoining proprietors of land, and those who may travel upon the road, either as passengers or workmen. And in regard to this latter class of persons, who are only interested in this matter temporarily, for the purpose of their own security while upon the road, we have no occasion to speak here. The adjoining proprietors certainly are primarily and principally interested in the maintaining of fences upon the line of railways. There is no doubt a remote incidental, and contingent interest in all the citizens, in having such roads carefully fenced. One's teams, cattle, and children, even, are thereby rendered less likely to receive damage by reason of the running of such roads. But this is an interest of so remote and contingent a character as scarcely to be supposed to form the basis of so extensive and expensive a charge upon such companies by the legislature. Certainly it should not be so held, unless so expressed in *totidem verbis*, or by the most obvious implication.' The above observations of Judge Redfield were made upon a statute that required the railway company 'to build and maintain sufficient fence, upon each side of their railway, through the whole route thereof." How much stronger then is the case, like the one at bar, where only portions of the track was required to be fenced."

In *Hoge* v. *Railroad Co.*, 35 W. Va. 566 (14 S. E. Rep. 152) Judge Holt expressed the opinion that cattle guards are for the benefit of the landowner on whose lands they are. So I do not regard the omission to put this cattle guard in as alone sustaining the action.

For these reasons we reverse the judgment and finding, and, rendering such judgment as the Circuit Court ought to have rendered, we enter judgment for defendant.