# CHARLESTON.

STARKS V. BALTIMORE & OHIO RAILROAD CO.

Submitted October 26, 1915.   Decided November 9, 1915.

1. RAILROADS—*Right of Way—Duty to Fence.*

    In absence of contract stipulation or express statutory provision, a railroad company is not required to fence its right of way. Section 14, ch. 42, Code, requires such enclosure only when the way is acquired by condemnation. (p. 95).

2. SAME—*Injury to Trespassing Stock—Liability—Direction of Verdict.*

    Although a carrier is chargeable for injury to stock trespassing on its track, if seen by its agents, or if in the exercise of ordinary diligence such agents could have seen the stock, in time to prevent injury thereto; yet if, by reason of the performance of other essential duties, proved by plaintiff and not contradicted, defendant offering no proof, such agents, though reasonably diligent, did not see the stock in time to avoid injuring them, defendant is not liable; nor, in such circumstances, is a directed verdict for defendant erroneous. (p. 96).

3. SAME—*Negligence—Presumption.*

    The paramount duty of a carrier's agents is to protect the property entrusted to them; and their actual and necessary attention to performance of such duty, when established by proof not contradicted, does not authorize an inference of negligent operation. (p. 96).

4. SAME—*Negligence—Defective Equipment—Presumption—Proof.*

    Nor does the actual employment of the agents' time in doing what the situation demanded, when usual and essential, necessarily imply defectiveness of equipment, furnished by the carrier. To constitute negligence, warranting recovery therefor, the defect must affirmatively appear from the proof. (p. 98).

5. NEGLIGENCE—*Submission to Jury—Evidence.*

   While negligence is generally a mixed question of law and fact, for jury determination only, yet when the negligence averred is not proved, or, as in this case, disproved, by plaintiff, the question need not be submitted to a jury. (p. 99).

6. SAME—*Declaration—Requisites—Specific Act.*

   A declaration need not specify the particular negligent act or defect relied on as the basis of a recovery. A general averment of negligence or defective equipment suffices. (p. 100).

Error to Circuit Court, Harrison County.

Action by R. William Starks against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error.

> *Reversed and rendered.*

*Geo. M. Hoffheimer* and *Charles G. Coffman,* for plaintiff in error.

*Harvey W. Harmer,* for defendant in error.

LYNCH, JUDGE:

By various assignments of error, defendant questions the correctness of rulings upon plaintiff's motion, sustained, to set aside the verdict in its favor by direction of the trial court, and to award him a new trial. Likewise, plaintiff complains on various grounds of the court's action in directing a verdict for defendant.

The declaration charged, and plaintiff undertook to prove, that by negligent and careless operation of its train defendant killed four valuable horses owned by him and then on defendant's right of way. The accident occurred about 9 :40 o'clock in the evening of June 21, 1913. The agents of defendant, at the time of the injury, were engaged in hauling twenty-four car-loads of coal from collieries located at the head of Mudlick run, over a spur track up the run from the main line below operated by defendant between Clarksburg and Fairmont. Plaintiff and his father owned adjoining lands, not separated by a division fence. Through both tracts the spur was constructed, and, likewise, was unenclosed. The spur is located on a side cut. On one side thereof, for a distance of 250 feet, is a steep bank, on the other a fill, each of them being

about 25 feet in height.  Near the main line the spur forms a
"Y", for convenient operation at that point.  A cattle-stop
was built across the spur near the lower boundary line, to
prevent the passage of stock from plaintiff's lands in that
direction.  A ravine near thereto afforded the only means of
access at that point for stock on or over the track to different
parcels of land owned by plaintiff and his father on either
side thereof.  At the time of the injury this way was partially
obstructed by a lumber pile and an engine placed there by
defendant.  The horses killed came onto the track at the upper
end of the fill, and proceeded towards the cattle-stop.  The
train approached the place of collision up a strong grade,
down the run, about 1000 feet in length, at a speed of eight
to ten miles an hour.  That the horses were on or near the
track at the time of the impact is obvious, though no one saw
them either before or at the time the injury was inflicted or
knew definitely where it occurred.  The discovery of the
bodies warrants the inference that the animals when struck
by the engine were near the cattle-stop.  Defendant's agents
did not see them, or know of their perilous situation.  Such at
least is the proof.

Upon these facts, condensed though they are, coupled with
the alleged lack of an adequate headlight, the trial court
directed a verdict for defendant, and thereafter, on motion of
plaintiff, set it aside and granted a new trial.

The several propositions relied on by plaintiff, and by him
sought to be maintained by citation of authorities, condensed
and restated are:  (1)  Sufficiency of the evidence to establish
negligence.  (2)  Injury to stock straying from enclosed lands
onto the unenclosed track, unexplained, is prima facie evi-
dence of negligence.  (3)  Negligence, being a mixed question
of law and fact, is one solely for the jury.

Does the mere failure to enclose the spur prove the negli-
gent destruction of plaintiff's stock?  At the common law, a
carrier was not required to fence its right of way.  33 Cyc.
1107.  Nor does our statute, §14, ch. 42, Code, impose such
duty, except where the way is acquired by condemnation.
*Clark* v. *Railroad Co.*, 34 W. Va. 200; *Railroad Co.* v. *Davis-
son*, 45 W. Va. 12.  Defendant procured its right by contract,
as we infer from the only allusion thereto by plaintiff, wherein

he says, referring to the cattle-stop, "the company was to put in one on each end of the right of way when they bought it". What the terms of the grant were we do not know, as no proof informs us; no copy of the contract or deed was introduced in evidence. Hence, no inference of negligence can arise in this case out of the mere failure to enclose the right of way.

Was the evidence introduced by plaintiff, defendant offering none, sufficient to show negligent operation of the train, due to the failure of the agents to exercise ordinary care in the circumstances presented by the proof? This assignment effectually makes necessary a review of all the proof introduced upon the trial of the case. Reduced to its simplest form, the contention is that, as the track was straight and unobstructed a distance of 540 feet from the cattle-stop in the direction from which the train approached the position occupied by the horses, ample time and opportunity were afforded such agents to discover their perilous situation and to prevent the impact; wherefore, plaintiff concludes, the negligence of the defendant was established. Conceding the facts to be as stated, the jury, if permitted to determine the liability thereon based, may properly have inferred the want of due care in the operation of the train.

It is well settled, however, by many decisions, among them being our cases of *Blaine* v. *Railroad Co.*, 9 W. Va. 254, *Hoge* v. *Railroad Co.*, 35 W. Va. 562, and *Kirk* v. *Railroad Co.*, 41 W. Va. 722, that the paramount duty of railroad agents is to protect the property entrusted to them by the carrier, and that subordinate thereto is the duty to exercise reasonable or ordinary care to prevent injury to stock trespassing on the right of way, when seen, or by the exercise of such diligence ought to have been seen, in time to avoid injury. That they did not see the horses killed, plaintiff himself proved by the engineer, whom he called to testify in his behalf on the trial. By the same witness, he proved, also, that great difficulty was experienced in hauling the twenty-four cars loaded with coal, up the steep grade. It may be that, if the engineer had kept a constant outlook for obstructions, he might have seen the stock on the track at the distance stated; or it may be said that, as the view was unobstructed, he ought to have seen their dangerous position and avoided the injury. But the

exact location of the collision is not definitely fixed. The nearest approach thereto was the finding of the bodies of two of the horses close to the cattle-guards and traces therefrom onto the main line, where the body of another one was carried by the force and momentum of the heavy train. By the engineer, however, plaintiff indubitably established two other important and basic facts, effectually operating in denial of the right of recovery. From these facts, it appears that the engineer was actually and necessarily engaged in the perform-ance of duties assigned to him by the carrier, and that, had he seen the horses, he could not have avoided collision with them by reason of his inability to stop the train within the distance mentioned. When the collision occurred, he was sanding the track to prevent the drive-wheels from slipping on the wet rails. The discharge of this function was essential to performance of his duties. It diverted his attention from his secondary duties. The situation confronting him, while ascending the 1000-foot grade to the cattle-guards, where presumably the collision occurred, as detailed by him, was: "I did not see the horses until I hit them. My attention was called to other things in the cab; I was using the hand sander, which put me in a position that I could not look out of the side window at all; I had to look through a small window in the front of the cab, and I wouldn't say but what I was putting on the ejector, or putting on the air, or what I was doing a few moments before that.   *   *   *   I began to use my sand at the entrance to the grade", and used it "at dif-ferent intervals. Of course, you can not put a full pipe of sand under an engine and leave it there; you have got to keep piling it or applying it at different intervals.   *   *   *   I never aimed to let my engine get over four or five car lengths or six that I did not get a view ahead of me, when conditions in the cab permit me to do so.   *   *   *   Where I had a dry rail I might not of had to use a hand sander, which would have given me a chance to look out of the side window. What we call the hand sander is located in front of the cab next to the top of the boiler, and requires a man right in front of the cab to get to it, and we use it on wet rails and bad rails that the air sander wont hold the engine down. I think the

fireman was the only one on the train with me, and he was shoveling coal''.

Nor does the mere employment of his·time in doing what the situation demanded imply defectiveness in equipment, constituting negligence.   The engine was not defectively equipped with sanding apparatus, so far as appears to the contrary.   The "hand sander" was a necessary supplement to the other appliances for distributing sand on the rails.   It apparently was a part of the equipment furnished the engineer, and, it may be, a necessary part of it.   Such use was necessary and unavoidable, so far as appears.   Application of it to the necessities of the situation was required, so far as the proof advises us, in the circumstances and conditions as they at the time appeared.   Indeed, resort thereto may have been, and so far as we know was, essential and requisite. Such is the only reasonable inference.   It does not appear that its use was exceptional or extraordinary.   The presence and application of the instrument does not warrant an inference of defectiveness elsewhere.   Defendant furnished it for use when necessary, and left the occasion for its employment to the discretion of its agent.   Nor did the agent devote an unreasonable length of time to the performance of his paramount duties.   Admitting that during the time he was so engaged he could have seen the horses 540 feet from him, if looking for obstructions on the track, the train, at eight miles an hour, would cover the space between them and him in forty-five seconds or at ten miles an hour thirty-six seconds.

Viewing the testimony introduced by plaintiff in the light most favorable to him, the train could not have been stopped in time to prevent impact with the horses, if the engineer had seen them within 250 feet of the place where the injury occurred.   But plaintiff proved that defendant was not aware of the presence of the stock on the track in time to avoid inflicting the injury.   He·also proved that the engineer was prevented from seeing the stock by reason of his active and actual engagement in the performance of the duty devolving upon him as the agent of the company.

On what proof, then, could a jury reasonably base an inference of negligence?   To draw such inference, they necessarily would have to discredit the only proof introduced to

show negligence except that relating to the injury inflicted. A verdict based thereon certainly would stand on• an unsubstantial foundation. *Johnson* v. *Railroad Co.*, 25 W. Va. 576, and *Blankenship* v. *Railroad Co.*, 43 W. Va. 135, cited by plaintiff, require more than mere proof of killing to show a prima facie right to a recovery. They hold essential the establishment of other facts and circumstances as necessary elements of plaintiff's right to mulct a carrier in damages for the negligent operation of its railroad. Negligence is a fact, and as such must be proved like any other fact necessary to warrant relief. Negligence may, it is true, be inferred; but the circumstances out of which the inference may arise must first be established by adequate proof. The killing of the horses does not alone prove want of ordinary care on the part of the train crew; and the testimony disproves such negligence.

Besides, proof by a plaintiff ordinarily can not serve as the basis of an inference inconsistent with the facts proved, as they may when proved by his adversary. In the one case, the jury must accept the facts as true; in the other, they may or may not credit them or may draw therefrom such inferences as reasonably may be deemed justifiable.· Generally, a party is bound by the testimony of witnesses introduced by him. To this rule the exceptions are few. How, then, can plaintiff escape the effect of proof introduced by him to establish ordinary care by the agents of defendant in the management and conduct of the business committed to their charge? Though the engineer may have been hostile, his answers indicate frankness on his part. He says he was careful to watch for obstructions on the track when not engaged in the performance of other essential duties devolving on him by virtue of his position, and that the time of the fireman was devoted to shoveling fuel into the engine in order to supply sufficient steam to pull the load up the stiff grade. Not only was the engineer called by plaintiff, but he was the sole witness introduced to prove negligence, and, therefore, was not contradicted. His testimony also showed the exercise of ordinary care in the operation of the train, lack of which was an essential element of plaintiff's right to a recovery.

While generally negligence is a mixed question of law and

fact, determinable only by a jury, as plaintiff contends, yet the rule is not universal. Where the negligence averred is not proved, and surely when it is disproved, it ceases to be a mixed question, and need not be submitted to a jury.

What has been said applies also with equal forcefulness to the engine headlight. It is proved to be of the same general character as those ordinarily used by railroad companies, the usual headlight for engines. That testimony plaintiff can not gainsay. He did not attempt to contradict it, though generally he would not be permitted to challenge its sufficiency or credibility, because bound by it.

Defendant denies plaintiff's right to prove defectiveness in the headlight, on the ground that the declaration failed to aver the defect. Such averment is not essential. A declaration need aver only negligent operation of a railroad. No rule of pleading requires a specification of the negligent act or acts relied on by the pleader. A general averment suffices, and admits the proof of the particular defects in machinery or appliances causing the injury for which recovery is sought by the plaintiff. *Robbins* v. *Railroad Co.*, 62 W. Va. 335.

For reasons stated herein, our order will reverse the judgment awarding a new trial, reinstate the verdict, and render judgment thereon for defendant, with the usual costs and damages.

*Reversed and rendered.*