D. I. TAYLOR

*v.*

THE BALTIMORE AND OHIO RAILROAD COMPANY, *a Corporation;* AND THE STATE ROAD COMMISSION OF WEST VIRGINIA, *a Corporation*

(CC 802)

Submitted April 28, 1953. Decided May 19, 1953.

No appearance for petitioner.

*John G. Fox,* Attorney General, *Thomas J. Gillooly,* Assistant Attorney General, and *Donald L. Schaffer,* Special Assistant Attorney General, for defendants.

LOVINS, JUDGE:

D. I. Taylor seeks a writ of mandamus to compel the Baltimore and Ohio Railroad Company, a corporation, and the State Road Commission of West Virginia to erect a fence on the division line between his land and another tract of land owned by the State Road Commission, and used for state highway purposes.

The petitioner filed his petition in the Circuit Court of Upshur County, West Virginia. The trial court awarded a rule in mandamus, returnable on the 12th day of December, 1951. On the return day of the rule, the State Road Commission appeared and demurred to the petition, assigning as grounds that the State Road Commission is a governmental agency under the constitution of this state, and is therefore immune in this proceeding. According to a recital in an order entered in this pro-

ceeding in the trial court, the Baltimore and Ohio Railroad Company, a corporation, likewise filed its demurrer to relator's petition. Recitals in the order of the trial court disclosed that the court overruled the demurrers of the State Road Commission and the Baltimore and Ohio Railroad Company to relator's petition. The demurrer of the Baltimore and Ohio Railroad Company is not in the record before us.

Upon the overruling of the demurrers to relator's petition, the State Road Commission filed its answer, admitting the acquisition of the land in the manner hereinafter stated, and that the land was conveyed to the State Road Commission by the Baltimore and Ohio Railroad Company as hereinafter shown. In its answer, the State Road Commission alleges that this proceeding could not be brought in Upshur County, since the Circuit Court of Kanawha County is the only Court having jurisdiction in this proceeding; that there is no statute requiring the State Road Commission of West Virginia to fence the right-of-way; and, that the Constitution of West Virginia, Article X, Section 6, does not permit the State Road Commission of West Virginia, it being an agency of the State, to assume the liabilities of the Baltimore and Ohio Railroad Company with respect to erecting a fence on private land.

The petitioner demurred to the answer of the State Road Commission of West Virginia, setting up that Code 14-2-3 is not applicable, since there are two defendants, one of which is not an agency of the State, and that Section 6, Article X of the Constitution is inapplicable.

The trial court does not certify the questions arising upon the sufficiency of relator's petition. But upon sustaining relator's demurrers to the answers of the Baltimore and Ohio Railroad Company and the State Road Commission, the trial court certified three questions to this Court. It is to be noted, however, that the demurrer of the Baltimore and Ohio Railroad Company is not in

the record, but there is a recital in the order of the trial court that the demurrer of the Baltimore and Ohio Railroad Company was considered.

The questions certified are summarized as follows: (a) May the State Road Commission of West Virginia be made a party defendant in the instant proceeding? (b) Does the Circuit Court of Upshur County have jurisdiction of this proceeding? (c) Are the defendants, or either of them, required to erect or maintain a fence in the circumstances disclosed by relator's petition?

Though the questions as certified by the trial court arise upon the demurrers to the answers of the Baltimore and Ohio Railroad Company and the State Road Commission, it is necessary that we advert to the relator's petition in order to state the factual background on which relator relied.

Such petition discloses the following facts: D. I. Taylor is now the owner of the residue of a 40 acre tract of land which adjoins another tract of land formerly owned by the Baltimore and Ohio Railroad Company, and used for a railroad right-of-way. Relator derives his title from the will of George W. Taylor. Such will bears date, January 4, 1917, and was probated in Upshur County, West Virginia on August 8, 1917. George W. Taylor acquired the 40 acre tract of land by a conveyance from C. L. Queen and Cora E. Queen by deed dated April 12, 1896.

C. L. Queen was the owner of the land on February 13, 1891. On, and prior to that date, the 40 acre tract of land then included a 2.62 acre tract. On February 13, 1891, the 2.62 acre tract was acquired by the West Virginia and Pittsburgh Railroad Company, a West Virginia Corporation, by a proceeding in eminent domain, heard and determined in the Circuit Court of Upshur County. The land was acquired for railroad right-of-way purposes, and was an integral part of the 40 acre tract. After its acquisition by the railroad company, the smaller tract was used as a right-of-way for railroad purposes.

The petitioner alleges that the land was cleared, *improved* and used for farming purposes on February 12, 1891, and prior to that time; that the remaining part of the 40 acre tract has been cleared and used for farm land since the 2.62 acres was acquired, as above stated.

By deed bearing date November 12, 1891, the West Virginia and Pittsburgh Railroad Company conveyed the 2.62 acre tract of land to the Baltimore and Ohio Railroad Company, a corporation, who, along with other persons then having some interest therein, conveyed the same to the State Road Commission of West Virginia by quit claim deed dated April 25, 1945.

The two railroad companies who formerly owned the 2.62 acre tract constituting their right-of-way, built and maintained a fence along their right-of-way line and joining the land of relator. The line fence so built was allowed to become out of repair so that it does not prevent livestock from going from relator's land to the tract formerly constituting the railroad's right-of-way. Relator alleges that he cannot use his land for farming purposes and that for two years or more, he has suffered great damages by being deprived of his land for the rea son that the fence between his land and the former railroad right-of-way is insufficient to prevent livestock from straying from his land to the land now owned by the State Road Commission of West Virginia.

Relator bases his claimed right to a mandamus upon the provision of a statute hereinafter quoted. He alleges that there is a duty to maintain the fence and that the statute requiring the construction of a fence has the effect of a covenant running with the land; that the Baltimore and Ohio Railroad Company could not divest itself of its duty under such covenant; and, prays in the alternative that either the Baltimore and Ohio Railroad Company be compelled to build and maintain such fence, or that they cause it to be built and maintained by some other person. Implicit in the prayer is that such fence,

if not maintained by the Baltimore and Ohio Railroad Company, should be maintained by the State Road Commission of West Virginia.

It is to be noted from the summary of the questions certified that two questions pertain only to the State Road Commission, and that the third question concerns the State Road Commission, and the Baltimore and Ohio Railroad Company. We therefore deem it proper to answer the three questions certified.

We have hereinbefore stated that the relator does not specifically pray for a writ of mandamus to require the State Road Commission to maintain the fence in question. But the prayer is so framed that if the Baltimore and Ohio Railroad Company should be required to maintain such fence, it would be impossible for that company to do so without invading the land formerly conveyed to the State Road Commission or the lands of the relator. Therefore, we treat the prayer of relator's petition to be in the alternative, that is to say, to require the Baltimore and Ohio Railroad Company or the State Road Commission to maintain the fence.

The Constitution of this State, Article VI, Section 35, provides "the State of West Virginia shall never be made defendant in any court of law or equity, * * *." That provision is without exception or qualification and is applicable to the State Road Commission of West Virginia as a governmental agency of the State. *Stewart* v. *Commission,* 117 W. Va. 352, 185 S. E. 567; *Mahone* v. *Road Commission,* 99 W. Va. 397, 129 S. E. 320. See *Watts* v. *Road Commission,* 117 W. Va. 398, 185 S. E. 570.

In so applying Article VI, Section 35, of our Constitution, it became apparent that such application of the constitutional provision might conflict with other provisions of the constitution relative to the taking of private property for public use. Accordingly, this Court held in *Hardy* v. *Simpson,* 118 W. Va. 440, 190 S. E. 680, that

mandamus would lie to require the State Road Commissioner to institute proper condemnation proceedings upon the lapse of a reasonable time after the completion of the work of constructing a public highway. See *Riggs* v. *Commissioner*, 120 W. Va. 298, 197 S. E. 813; *Childers* v. *Road Commissioner*, 124 W. Va. 233, 19 S. E. 2d 611; *Newman* v. *Bailey*, 124 W. Va. 705, 22 S. E. 2d 280; *Doss* v. *City of Mullins*, 133 W. Va. 351, 56 S. E. 2d 97. The *Riggs* case is explained in *Gardner* v. *Bailey*, 128 W. Va. 331, 337, 36 S. E. 2d 215, to the effect that before mandamus would lie, the land owner should show compensable damages to his land.

In the cases of *Downs* v. *Lazzelle, Judge,* and *State Road Commission* v. *Lazzelle, Judge,* 102 W. Va. 663, 136 S. E. 195, it was held that the State Road Commission and the County Court could be restrained by injunction from unlawful invasion of private property of another. That holding is expressly overruled in the case of *Stewart* v. *Commission, supra.*

Agreeable to the *Stewart* and *Mahone* cases, the State Road Commission may not be made a party defendant in the instant proceeding.

Another question relates to the venue of this proceeding. It was held in the case of *Downs* v. *Lazzelle, Judge, supra,* that a suit could be maintained in the Circuit Court of the county where the unlawful act was about to be committed, or was threatened, notwithstanding the provisions of Section 4, Chapter 37, Code of 1923.

Section 4, Chapter 37, Code of 1923 is designated as Code, 14-2-4, with some inconsequential changes, in the Code of 1931. Code 14-2-4 was amended, and is designated as Code, 14-2-3 by Section 3 of Chapter 20, Acts of the Legislature, 1941, which reads as follows: "The following proceedings shall be brought and prosecuted only in the circuit court of Kanawha county: 1. Any suit in which the governor, any other state officer, or a state agency is made a party defendant, except as garni-

shee or suggestee. 2. Any suit attempting to enjoin or otherwise suspend or affect a judgment or decree on behalf of the State obtained in any circuit court. This section shall apply only to such proceedings as are not prohibited by the constitutional immunity of the State from suit under section thirty-five, article six of the Constitution of the State."

Prior to the amendment of 1941, this Court in construing Code 14-2-4, now Code, 14-2-3, held that proper venue of a suit against the West Virginia Bridge Commission was in a Circuit Court of the County where the State Capitol was located. *Davis* v. *Commission,* 113 W. Va. 110, 166 S. E. 819.

After the amendment of 1941 above quoted, this Court considered the amended statute in the case of *Newman* v. *Bailey, supra,* and held that the venue of a mandamus proceeding, brought in a Circuit Court against the State Road Commission was in Kanawha County.

We adhere to·the cases of *Davis* v. *Commission, supra,* and *Newman* v. *Bailey, supra.* Though a private corporation is a joint defendant in the instant proceeding, we apply the same rule, and hold that the proper venue, if it can be maintained in any circumstance, is in Kanawha County.

The third certified question goes to the merits of relator's claim. Prior to the enactment of the statute hereinafter quoted, there was no law of general application requiring any person to fence his land. *Blaine* v. *C. & O. R. R.,* 9 W. Va. 252. By Chapter 80, Acts of the Legislature, 1882, it was provided that: " * * * in all cases when the property taken under this chapter [eminent domain proceedings] is by a railroad company, and is land which has been cleared and fenced, the said railroad company shall construct and forever maintain suitable * * * fences on both sides of the land thus taken; and no such railroad shall be used for the transportation of freight and passengers until such fences * * * are

built and constructed." The Acts of the Legislature, 1882, appear in Warth's Code of 1887, Second Edition, as Section 14, Chapter 42. By Chapter 81, Acts of the Legislature, 1901, Regular Session, the quoted statute was amended and reenacted, without material change.

The applicable statutory provision is designated in the Code of 1931 as Code, 54-1-7, and reads as follows: "If any company shall acquire land under the provisions of this chapter [proceedings in eminent domain] * * *. If such land shall have theretofore been cleared and fenced, or shall thereafter be cleared and fenced, the company shall construct and forever maintain suitable farm crossings to adequately serve the tract of land as a whole, and, if a railroad company, cattle guards and fences, on both sides of the land condemned and appropriated."

In *Maynard* v. *Norfolk & W. R. Co.*, 40 W. Va. 331, 21 S. E. 733, it was held that the provisions of the then existing statute was for the benefit of the land owners. The statute was discussed and considered in *Clarke* v. *Ohio River R. Co.*, 39 W. Va. 732, 743, 20 S. E. 696. But the Court in that opinion did not consider the aspects of the statute presented in the instant proceeding. In *Starks* v. *Railroad Co.*, 77 W. Va. 93, 87 S. E. 88, the first point of the syllabus reads as follows: "In the absence of contract stipulation or express statutory provision, a railroad company is not required to fence its right of way. Section 14, ch. 42, Code, [Code 54-1-7, Michie's Code, Serial Section 5367] requires such enclosure only when the way is acquired by condemnation." The duty of a railroad company to fence its right-of-way was created by statute and is limited to cases coming under the provisions of such statute. *Clark* v. *Ohio River R'y. Co.*, 34 W. Va. 200, 12 S. E. 505. There is no requirement that a railroad company fence its right-of-way, except where it has condemned land for its use. *Grafton & G. R. Co.* v. *Davisson*, 45 W. Va. 12, 29 S. E. 1028. See *Blaine* v. *C. & O. R. R., supra.*

In the instant proceeding, relator's petition does not

allege that the land which he now owns was, or is, fenced. He does allege that it was, and is, improved land. The word improved is not synonymous with fenced. It is conceivable that improvements on land may consist of many and varied structures thereon. Hence, the allegation of relator's petition is not strictly within the provisions of the statute in force in 1891, or at the present time. But we do not rest our decision on such strict interpretation.

There are other reasons for holding the statute regarding the fencing of railroad right-of-ways inapplicable to the present situation. Relator's petition alleges that the 2.62 acre tract is now used for highway purposes. It is to be assumed that the railroad company no longer occupies and uses the right-of-way formerly owned by it. From the discussions in the cases decided in this jurisdiction, though the opinions are not explicit, there is an indication that this Court, in accordance with the general rule, regarded the statute requiring the erection and maintenance of fences by railroad companies, as an exercise of the police power of the State, for the benefit of adjoining landowner, and the traveling public whose lives or limbs may be endangered by railway accidents caused by collisions with livestock straying on the railroad right-of-way. Thornton on Railroad Fences and Private Crossings, Page 9, et seq. See *Union Traction Co.* v. *Anderson,* (Tenn.), 242 S. W. 876; *Atlantic Coast Line R. Co.* v. *Ivey,* (Fla.), 5 So. 2d 244. Note 5 L.R.A. 737; 3 Elliott on Railroads, Third Edition, Page 642. See 74 C.J.S. Railroads, Section 177.

True, motor vehicles operating on public highways may kill livestock resulting in serious injury, but there is no statute requiring the fencing of public highways, as such, by the State to protect property from dangers incident to the use of such highway.

A police regulation may be rendered arbitrary by subsequent events. *Abie State Bank* v. *Weaver,* 282 U. S.

765; 51 Supreme Court, 252; 75 L. Ed. 690;*Bryan* v.
*Hubbell Bank of Hubbell, Nebraska,* (Nebr.), 245 N. W.
20; Certiorari denied, 289 U. S. 785; 53 Supreme Court
785; 77 L. Ed. 1478; 16 C.J.S. Constitutional Law, Section 175.

Since a change has resulted in the use of the land by
a railroad company as a railroad right-of-way to a use
for highway purposes, we think the statute as it read
in 1891 or at the present time, is inapplicable as to the
2.62 acre tract now used for highway purposes.

The word "forever" as used in the statute concerning
maintenance of a fence, is defined as "eternally, without
ever ending, continuously, incessantly". We do not think
that such word was used in the sense that fences should
be maintained in perpetuity.

Giving it a reasonable meaning, we think that the
word as used in the statute means that so long as the
right-of-way acquired by proceedings in eminent domain
is used for railroad purposes, fences should be maintained. Such meaning is consistent with the other portions of the statute. It is conceivable that land, when
abandoned by a railroad, may be acquired by other persons for variant purposes, and that to require a fence to
be erected would prevent the use of the land for a lawful
purpose, where no fence would be needed or the exercise
of the police power of the state would be required or
appropriate.

This Court has passed on a cognate question. In the
case of *Harper* v. *Railway Company,* 76 W. Va. 788, 86
S. E. 919, the railway company had covenanted to erect
a depot on lands owned by a private individual. In an
equity suit to require specific performance of that covenant, this Court held that the covenant ran with the land
granted, and would be enforced against the covenantor;
but that the decree of specific performance should protect the public interest and the interest of the railroad
company.

We perceive no logical or rational reason for requiring the railroad company or its successors in title to maintain a fence based on the mandate of a statute which is a police regulation of railroads where no railroad is operating or existing.

We do not pass on the question whether the statute creates, or has the effect of a covenant running with the land, but we rest our decision upon the object and purpose of the statutes herein considered.

In accordance with the foregoing, we answer the certified questions as follows: (1) This proceeding cannot be maintained against the State Road Commission, though a private person is a party defendant; (2) that the venue of this proceeding, if it can be maintained in any circumstance, is in Kanawha County; (3) that the statute relied upon by the relator is inapplicable because of changed conditions, and neither the State Road Commission nor the Baltimore and Ohio Railroad Company can be required to build such fence.

The rulings of the Circuit Court of Upshur County, on the demurrers of relator to defendant's answers, are reversed.

*Reversed.*