# CHARLESTON.

ROBERTSON GROCERY Co. *et al. v.* T. J. KINSER & LEONA KINSER

Submitted January 30, 1923.   Decided February 20, 1923.

1. JUDGMENT—*Decree Founded on Petition by Stranger Containing New Matter Without Notice.*

   A petition filed by a stranger in a cause, asking for relief against a defendant therein on new matter contained in such petition, must be filed by leave of court, must make defendant a party to it, and process to answer it must be served on such defendant, unless waived by appearance or otherwise; a decree against the defendant founded on such petition, without process served or waived is void, and will be reversed in this court on appeal. (p. 175).

2. FRAUDULENT CONVEYANCES—*Presumption Against Bona Fides of Transaction of Wife's Purchase of Land in Contest With Creditors of Husband Not Overcome Except by Convincing Proof.*

When a wife claims in a contest against the creditors of her husband to have purchased land there is a presumption against the bona fides of the transaction which she can not overcome except by clear and convincing proof that the property was paid for by her with money derived from some source other than her husband. (p. 176).

3. EVIDENCE—*Failure to Call Witnesses to Support Allegation Raises Presumption That Testimony Unfavorable.*

Where the wife claims to have made the money by carrying on a separate business, her failure to call witnesses with whom she alleges she had business dealings, to testify in her behalf, raises a presumption that their testimony would have been unfavorable. (p. 177).

4. FRAUDULENT CONVEYANCES—*Wife's Failure to Affirmatively Establish That Property Was Purchased With Her Separate Estate Warrants Decree for Creditors of Husband.*

Under such circumstances, the assailing creditor is not required to show that the husband did actually furnish the money; a showing that he could have done so and a failure of the wife to show by clear and full proof that he did not do so, but that the moneys were derived from some other source than her husband, warrants a court of equity in setting aside a deed on the ground that the property was purchased by funds furnished by the husband at the expense of his creditors. (p. 177).

5. APPEAL AND ERROR—*Decree Prematurely Entered Under Misapprehension of Law, Remanded.*

Where the record of a chancery cause discloses that a decree was prematurely entered, before the merits of the cause had been properly developed upon the vital issue involved and that there is a strong probability of the existence of evidence decisive thereof, which counsel under a misapprehension of law have failed to adduce, the court will reverse the decree and remand the cause for further proceedings. (p. 179).

Appeal from Circuit Court, Logan County.

Suit by the Robertson Grocery Company and others against T. J. Kinser and wife. From a decree for plaintiffs, defendants appeal.                    *Reversed and remanded.*

*Hicks & Chambers,* for appellants.

*S. Riddle* and *Chafin & Estep,* for appellees.

MEREDITH, JUDGE:

Defendants seek to reverse a decree setting aside a deed for certain land, made to defendant Leona Kinser and holding the land liable for her husband's debts.

On December 4, 1920, Leona Kinser, wife of T. J. Kinser, acquired by deed from Ollie Bryant and George Bryant, her parents, a tract of about 30 acres in Logan county, the home place of the Bryants, at the price of $1500. Of this amount she paid $600 cash, and gave her note for the balance. Several months later, she paid $400, and subsequently $18.00. The note was not secured by a lien on the land.

On November 17, 1919, Robertson Grocery Company obtained a judgment against T. J. Kinser before a justice of Logan county for $300 and costs. This was not contested. An execution was issued thereon, and levied on a team of mules; upon a sale thereof, at the price of $75.00, the costs of their keep, the levy, sale and the other costs amounting to $74.95, there was but a nickel left to pay on the principal debt. How this was overlooked does not appear. At August Rules, 1921, the Robertson Grocery Company filed its bill in the circuit court of Logan county against T. J. Kinser and Leona Kinser, his wife, as non-residents, averring the existence and non-payment of its judgment, and attacked the conveyance above mentioned as being in fraud of the creditors of T. J. Kinser, charging that the money paid for the land was furnished by T. J. Kinser, and that Leona Kinser had no means of her own, with which to pay for the land. On motion of plaintiff's counsel, a decree by default was taken September 6, 1921, in vacation, the defendants being proceeded against by order of publication, directing a sale. On October 12, 1921, Leona Kinser filed her petition showing that she had not been personally served with process in the cause, that she had a just defense and asked that the case be reheard and that she might make defense. An order was entered permitting her to file her answer, and the sale was

stayed until the further order of the court. She filed her answer denying that the land was paid for out of any moneys belonging to her husband, but averred the money was from her own separate funds.

Depositions were taken on behalf of both plaintiff and defendants; also certain depositions were taken on behalf of Williamson Grocery Company tending to show that it held an unpaid note executed to it by T. J. Kinser for $430.61, though that company did not become a party to the case until some months later, when at the January Term, 1922, it filed its petition setting up the fact that it obtained a judgment against T. J. Kinser, before the circuit court of Pike County, Kentucky, on May 18, 1914, for the sum of $430.61, with interest from November 5, 1913, and costs, and filed therewith a certified copy of the judgment. On its motion it was admitted as a party plaintiff. To this petition the Kinsers were made defendants and there are proper allegations therein, but no process was issued thereon, nor did they make any appearance thereto. Two days after the filing of the petition the court entered the decree complained of. By the decree the Robertson Grocery Company recovered its claim of $338.94, and the Williamson Grocery Company recovered $628.69 against T. J. Kinser; the deed was set aside as in fraud of their claims, the court finding that the moneys paid on the land were paid, not by Leona Kinser, but by her husband; the land was ordered sold to satisfy the debts and costs.

The first error assigned is as to the claim of Williamson Grocery Company. Against this, one main ground is urged: want of process on its petition. This is fatal. Until the petition was filed the Williamson Grocery Company was a stranger to the record. Its rights were not mentioned in the bill. "A petition filed by a stranger to a cause, asking relief against a defendant therein on new matter contained in such petition, must be filed by leave of court, must make such defendant a party to it, and process to answer it must be served on such defendant, unless waived by appearance or otherwise." *Fowler* v. *Lewis's Admr.*, 36 W. Va. 112, 14 S. E.

447; *Freeman* v. *Egnor*, 72 W. Va. 830, 79 S. E. 824. We need not notice the other reasons urged against the claim of Williamson Grocery Company; as to that claim defendants had no day in court, no opportunity to be heard; that part of the decree is not merely erroneous, but void.

Defendants also urge that the court erred in setting aside the deed and in finding that the moneys paid on the land were furnished by T. J. Kinser, the husband. They conceded that when a wife claims, in a contest against the creditors of her husband, to have purchased land, there is a presumption against the bona files of the transaction, which she can not overcome except by clear and full proof that it was paid for by her with money derived from some source other than from her husband; but they insist that they have met this test and have clearly and convincingly proved that the moneys paid were not furnished by the husband. There is no controversy about the law. It is solely a question of fact.

The defendants live at Stone, Pike County, Kentucky. They have been married about thirty years. For the first ten or twelve years after marriage they lived in Logan County, West Virginia, but about eighteen years ago moved to the section where they now live. During this latter period, at least for fifteen years past, it is shown that T. J. Kinser has been insolvent. He engaged in a lumber operation in Logan County in 1913, and for some years thereafter, but made no money. Indeed, the record shows that he steadily lost money. If the record is to be believed, he could not have, at any time, furnished the money to pay for this land, because it shows he never made any. He says that about fifteen years ago he had acquired about $800 or $1000, took a considerable timber contract with Palmer, thought he was going to make a lot of money, but lost it all; that his wife, while he was away from home in the timber business, kept boarders, ran her own affairs, and by means of keeping boarders, selling hogs, eggs, chickens and produce, saved the money with which she bought the land; that during this period he contributed very little, if anything, to support her and their children. The wife fully corroborates her husband's statements. There are other wit-

nesses who testify to the fact that she kept boarders, one or
two to the fact that she sold hogs and produce, but the evi-
dence, aside from that of the two defendants, as to her deal-
ings, is very meager. She is a woman of no education, can
not read or write, and of course, could not keep accounts.
She testifies that she kept no bank account, but it is not shown
how far she lived from any bank. She says she gradually
accumulated the $600, mainly by keeping boarders, gives the
names of three of them, but they are not called as witnesses;
that she kept the money at her home. She also says that the
other money, the $400 payment and $18.00 payment were de-
rived in the same way, keeping boarders, selling produce,
eggs, checkens, hogs and the like. She testified that she then
had 22 head of hogs at her home. She had no separate estate
at the time of her marriage except a cow and calf given her
by her parents; that she bought the place to keep her father
and mother, who wanted to sell, as they were getting old,
and she wanted to go back to her old home to live. She denies
that her husband furnished any part of the money that went
into the property. It is clearly proved by disinterested eye-
witnesses that she actually paid the money over. She also
executed the note. The husband had nothing to do with the
actual purchase. He remained at home at Stone while she
went to her parents' home in Logan County to make the
deal.

The evidence as to her ability to save out of her own earn-
ings a sufficient sum to make these payments is not as clear-
ly developed as it might have been. Some of her boarders
and some of her neighbors, or those to whom she made sales
of produce, or who had business dealings with her, might have
been called to establish the fact that she carried on business
on her account, and the extent thereof. Under the law the
separate earnings of a married woman, where she engages in
business on her own account, belong to her. There is no evi-
dence that any money was contributed by the husband to pay
for this property. The burden, however, is cast upon her to
rebut the presumption that he did furnish it, and she is bound
under decisions to prove by clear and convincing evidence

that she furnished it out of her own separate earnings or estate. While it is not shown directly that he made any money during the past fifteen years, yet it is shown that during this period he was at work; that he was industrious; that he engaged in the timber business, and in connection with it ran some sort of a store, probably a commissary, bought at times considerable stocks of supplies, and it is for these supplies that he now owes. Plaintiff's debt is for supplies for one of these enterprises. When it was contracted does not appear, though the judgment thereon was obtained in November, 1919. A significant circumstance is that the husband did not know his wife was going to buy this land, knew nothing about the matter, until she brought the deed home, except he heard her talk to some members of the family about it. She never mentioned it to him. She has nine children, one son past 24, and one about 21. They were not called as witnesses. Her failure to call witnesses in her behalf, especially those with whom she had dealings, raises a presumption that their testimony would have been unfavorable. In view of these circumstances, we feel that she has not clearly and convincingly rebutted the presumption that the funds paid on the land were furnished by her husband. They could have been taken out of his business, permitting his creditors to suffer, while he was gradually turning the moneys over to his wife. We have carefully considered the evidence, and have weighed every circumstance in her favor; no lien was reserved on the face of the deed. To permit the decree to stand means that plaintiff's claim is to be paid ahead of her parents', as they have only her note and they may lose their rights; another matter is the extraordinary costs incurred in the sale of T. J. Kinser's property on plaintiff's execution. No question is raised here about it, but we are in a court of equity. Why an officer should keep a team under levy until their keep would amount to as much as their sale value we can not understand. Better leave them in the hands of the debtor. He might make something out of them over and above cost. We would reverse the decree and dismiss the bill if we could do so without going squarely against the law, but to do this

would set a dangerous precedent which might do greater injustice.

We are constrained to believe that defendants' counsel proceeded under a mistaken view of the law; that they overlooked the fact that defendants' failure to produce evidence of others than themselves, touching the business dealings of the wife, would be deemed presumptively unfavorable to their contention. But from the record it clearly appears that such evidence can be produced. In the interest of justice it ought to be produced if it exists. Under such circumstances, we feel that an opportunity should be given the defendants so they can fully develop their defense. For this we have many precedents that apply to both parties, and whether the case be at law or in equity. In *Peabody Ins. Co.* v. *Wilson,* 29 W. Va. 528, 2 S. E. 888, it was held:

> "If a demurrer to evidence be so negligently framed that it does not contain the necessary facts, on which a judgment on the merits of the case can be safely founded, and the court from the facts appearing in the record judicially knows, that other evidence exists within the reach of the parties, by which the omitted facts may be supplied, the demurrer should be set aside and a new trial awarded."

This was followed by *Love* v. *Tinsley,* 32 W. Va. 25, 9 S. E. 44, holding that because a copy of a judgment purported to be exhibited with plaintiff's bill and on which his relief rested, but which had been by mistake omitted from the record, the cause would be remanded so that the exhibit might be supplied. In *Holt* v. *Taylor,* 43 W. Va. 153, 27 S. E. 320, a decree erroneously confirming a commissioner's report, based on insufficient evidence, was reversed by this court, where it appeared from the record that other testimony could have been produced upon the question. In *Hager* v. *Melton,* 66 W. Va. 62, 66 S. E. 13, the circuit court permitted certain affidavits to be filed on the hearing of a chancery cause that set up facts, which if properly proved would have entitled the party to relief. This court reversed the case so as to per-

mit the party to take his evidence in regular form.   In *Pyles v. Grimes,* 90 W. Va. 176, 110 S. E. 556, it was held:

"Where the record of a chancery cause discloses that a decree was prematurely entered, before the merits of the cause had been properly developed upon the vital issue involved and that there is strong probability of the existence of evidence decisive thereof, which counsel under a misapprehension of law have failed to adduce, the court will reverse the decree and remand the cause for further proceedings."

Numerous other cases might be cited in support of our holding, among them:   *Woodrum Home Outfitting Co.* v. *Adams Express Co.,* 90 W. Va. 161, 110 S. E. 549; *Cook* v. *Raleigh Lumber Co.,* 74 W. Va. 503, 82 S. E. 327; *LaBelle Iron Works* v. *Quarter Savings Bank,* 74 W. Va. 569, 82 S. E. 614.

For the foregoing reasons, we will reverse the decree and remand the cause for further proceedings.

*Reversed and remanded.*