# CHARLESTON.

ALICE H. HUMMEL v. WM. MARSHALL, SR., *et al.*

Submitted November 6, 1923.    Decided November 20, 1923.

1. WITNESSES—*Claimant Under Resulting Trust not Competent Witness to Prove Payment Through Decedent.*

    The claimant of title by resulting trust in land of which another died legally seised is not a competent witness to prove payment of the purchase money through such other person. (p. 45).

2. HUSBAND AND WIFE—TRUSTS—*Money of Wife, Invested in Husband's Name, Presumed Gift; in Absence of Facts Rebutting Presumption, Wife has no Resulting Trust.*

    Money of a wife invested in land in the husband's name is presumptively a gift, and, in the absence of facts and circumstances rebutting the presumption, such as violation of a prior or contemporaneous agreement to take the title in the wife's name, ignorance of its having been taken in the husband's name, subsequent expenditure of the wife's money in improvements thereon, an effort on her part to obtain the title after discovery of its condition, control of the property as her own against the husband, or the like, there is no resulting trust in her favor.    (p. 45).

3. APPEAL AND ERROR—*Decree Prematurely Entered Under Misapprehension of Law Remanded.*

    Where the record of a chancery cause discloses that a decree was prematurely entered, before the merits of the cause had been properly developed upon the vital issue involved, and that there is a strong probability of the existence of evidence decisive thereof, which counsel under a misapprehension of law have failed to adduce, the Court will reverse the decree and remand the cause for further proceedings.    (p. 48).

Appeal from Circuit Court, Kanawha County.

Suit by Alice H. Hummell against Wm. Marshall, Sr., and others.    From a decree for defendants, plaintiff appeals.

*Reversed and remanded.*

*A. M. Belcher,* for appellant.

*C. W. Good,* for appellees.

LITZ, JUDGE:

This appeal is from a final decree entered by the circuit court of Kanawha county, September 29th, 1922, which denied the plaintiff relief on her bill, filed against the heirs of her deceased husband for the recovery of certain real estate conveyed to the husband in his lifetime, alleging that she had purchased the property and paid the consideration for the deed.

The bill shows that plaintiff is the widow of James E. Hummel, who died February 2d, 1920, intestate and without descendants, leaving surviving him the plaintiff and defendants (collateral kindred), as his sole distributees and heirs at law; that on the 23d day of May, 1916, plaintiff purchased from John H. Guill and Margaret Conker a house and lot on Watts Street, in the city of Charleston, which became and remained her separate property until March 5th, 1919, when she sold and conveyed the same to W. G. Carper for a cash consideration of $3,500.00; that thereafter on the 17th day of July, 1919, she purchased from James Overstreet a house and lot on Bigley Avenue, in Charleston, for the sum of $3,000.00, paid out of her funds and separate estate; but that legal title thereto was conveyed by Overstreet to her husband, James E. Hummel, who thereby became a trustee holding the property for her benefit.

The joint and several answer of defendants, William, Marshall, Sr., and Ella Mason, denies that the plaintiff purchased from James Overstreet the house and lot on Bigley Avenue or that the consideration was paid out of funds belonging to her; and further denies that the conveyance of the property to James E. Hummel created a resulting trust in favor of the plaintiff. The answer also avers that James E. Hummel purchased and paid for the Watts Street property and, being embarrassed with debt, directed conveyance to the plaintiff; that upon the sale thereof to W. G. Carper the consideration paid, as was understood between the plaintiff and James E. Hummel, became his property; that he pur-

chased and paid for, out of his own funds, the house and lot on Bigley Avenue and, having discharged his debts, took title in himself; to all of which plaintiff submitted and agreed.

There was general replication to this answer; but no other pleading was filed. The only evidence is the deposition of plaintiff to the effect that she had owned the house and lot on Watts Street; that after the purchase of the lot she and her husband, James E. Hummel, built the house, and thereafter occupied it for nearly three years; that he sold this property to W. G. Carper, and with the proceeds bought the Bigley Avenue house and lot; that W. G. Carper paid her husband all of the consideration except $50.00, by check for $3,450.00, which was deposited by the latter in Elk Banking Company, of Charleston, to the credit of his mother, C. A. Hummel, who resided with him and plaintiff; that she and her husband lived together upon the property in controversy from the time of its purchase until his death, February 2d, 1920.

The plaintiff files with her deposition check for $3,450.00 given by W. G. Carper to James E. Hummel on the consideration for the Watts Street property; check of C. A. Hummel (By James E. Hummel) to James Overstreet as part of the consideration for the property in controversy; and a credit item from bank pass book, as follows:

"Charleston, W. Va., March 6, 1919.          No. 1451.
        THE KANAWHA VALLEY BANK of Charleston
Pay to the order of James E. Hummel........$3450.00
Thirty-four hundred fifty....................Dollars
In full for House & lot Watts St.
(Endorsement): James E. Hummel."
                                        W. G. Carper."
        "Deposits                              No. 402
The Elk Banking Company 69-41
        Insured
                Charleston, W. Va., July 18, 1919.
Pay to the order of James Overstreet........$2573.00
Twenty-five hundred Seventy-three ..........Dollars
        For In full for House & Lot
                        Mrs. C. A. Hummel
                        James E. Hummel  By
(Endorsement): Jas. Overstreet."

"THE ELK BANKING COMPANY
Charleston, W. Va.
In account with Mrs. C. A. Hummel,
City.

1919
Mar. 6.   To Dep. ......................$3450.00"

No deeds or other papers are exhibited with the pleadings or deposition.

Without developing the facts, plaintiffs and defendants take issue on the law.

Plaintiff affirms that payment by James E. Hummel, out of her funds, of the consideration for the property in controversy created a resulting trust in her favor. The defendants deny such trust on two grounds: (1) the evidence of the plaintiff, under Section 23, Chapter 130, (Barnes' 1923) Code, is incompetent to prove payment of the consideration with her money; and (2) this fact alone will not raise a resulting trust in her favor.

The first point is sustained by the case of *Cassidy* v. *Cassidy*, 74 W. Va. 53, holding that, "The claimant of title by resulting trust in land of which another died legally seized, is not a competent witness to prove payment of part of the purchase money to or through such other person."

Plaintiff rests her legal contention on the case of *Berry* v. *Wiedman*, 40 W. Va. 336, wherein point one of the syllabus states: "When a husband purchases property with his wife's money and takes the deed in his own name, a resulting trust is raised in her favor; unless it is shown that she intended the money as a gift or loan to her husband, the establishment of which fact devolves on the husband or those claiming under him."

It was shown in that case, where the widow was suing the heirs of her deceased husband, that a short while before her marriage with him, in January, 1866, he had purchased a lot of land, without paying the purchase price or obtaining a deed therefor. After the marriage her father, as an advancement to her, furnished money to pay for the property and the deed was then taken in the name of the husband. From time to time she received other funds of her father's estate, amounting in the aggregate to about

$8,000.00.    In the years 1886, 1887 and 1889, with her
separate funds at a cost of from $1,000.00 to $1,500.00 she
erected a dwelling house on a small portion of the original
property, worth about $100.00, the residue having been sold.
They lived in peace together from the time of their mar-
riage until his death March 18th, 1891.  He continually
recognized her ownership of the property.  It will be ob-
served that the wife's beneficial ownership there did not
depend upon her payment of the consideration alone but was
affirmatively established by full proof.  JUDGE DENT, who
delivered the opinion of the Court, also wrote the subse-
quent case of *Crumrine* v. *Crumrine,* 50 W. Va., 226, which
holds that, ''Where a husband receives funds belonging to
his wife and with her knowledge and consent invests it in
real estate in his name, the law raises a *prima facie* presump-
tion of gift.''  In the inimitable style that was his. the
writer observes: ''Her confidence and trust in her hus-
band at that time seem to have been perfect, without a
cloud to darken the sky of their matrimonial happiness.
There is no doubt but what she gave him the money with
full faith in his proper disposition thereof for their com-
fort and felicity.  She had no forbodings at this time as
to the future.  If she could have lifted the veil and have for-
seen another in the full enjoyment of her rights and position
the natural jealousy of the human heart might have caused
her to have made a different disposition of her patrimony,
but an all-wise Providence for His all-wise purposes has
seen fit to make of us short sighted creatures with sanguine
hopes as to the length of our days, which may be few in
number and full of trouble.''

The more recent case of *Whitten* v. *Whitten,* 70. W. Va.,
422, announces the following rule: ''Money of a wife in-
vested in land in the husband's name is presumptively a
gift, and, in the absence of facts and circumstances rebut-
ting the presumption, such as violation of a prior or con-
temporaneous agreement to take the title in the wife's name,
ignorance of its having been taken in the husband's name,
subsequent expenditure of the wife's money in improvements
thereon, an effort on her part to obtain the title after dis-

covery of its condition, control of the property as her own against the husband, or the like, there is no resulting trust in her favor."

JUDGE POFFENBARGER, in the opinion reviewing our previous cases and numerous text writers, states: "However the rule may have been stated from time to time, the fact is that in every case in which this Court has upheld and enforced a claim to a resulting trust in favor of a wife as against the heirs of her husband, she has clearly rebutted the presumption of a gift. In *Skaggs* v. *Mann* (46 W. Va. 209), a prior or contemporaneous agreement to take the deed in the wife's name and her ignorance of the breach of that agreement were shown. In *Berry* v. *Wiedman*, the chief value of the property was in the improvements made by the wife at her own cost, subsequent to the purchase of the land. Her uniform claim of ownership and recognized control of the property, during her husband's life, were also shown. In *Cresap* v. *Cresap*, (54 W. Va. 581), the allegations treated as sufficient on demurrer were substantially that the property had been conveyed to the husband without the knowledge or consent of the wife and that, on discovery of the fact, she had repeatedly demanded a conveyance to her, which was promised, but never executed. An equally strong case on the facts was shown in *Standard Mercantile Co.* v. *Ellis*, 48 W. Va. 309. We quote: 'The proof appears to plainly establish that the property was paid for with the wife's money, and was to be deeded to her, but that the title bond, without her knowledge or consent and apparently without his knowledge, was taken in his name. When she discovered this she sent the title bond by her son to have a deed for the property made to herself.' This conduct of the wife clearly negatived the presumption."

So, in accordance with that decision, regardless of the law in other jurisdictions, we must hold that the mere investment by the husband of the wife's money in real estate will not raise a resulting trust for her benefit in the land. But as we have stated, the facts in this case have not been properly developed; and in view of the hardship that will result

to the plaintiff if deprived of a home in the interest of the defendants, the collateral kindred of her deceased husband, we have decided to reverse the decree and remand the cause for further proceedings.

"Where the record of a chancery cause discloses that a decree was prematurely entered, before the merits of the cause had been properly developed upon the vital issue involved, and that there is a strong probability of the existence of evidence decisive thereof, which counsel under a misapprehension of law have failed to adduce, the Court will reverse the decree and remand the cause for further proceedings." *Robertson Grocery Co.* v. *Kinser,* 93 West Va., 172, 116 S. E. 141, citing numerous decisions of this Court.

*Reversed and remanded.*